Argued and submitted July 27, plaintiff discharged from custody August 24, 1982

In the Matter of the Application of
Jeffrey Frank Liberman, for a
Writ of Habeas Corpus,

LIBERMAN,
*Plaintiff*,

*v.*

BURKS,
*Defendant.*

(SC 28833)

650 P2d 83

Ross M. Shepard, Assistant Director, Public Defender Services of Lane County, Inc., Eugene, argued the cause and filed the petition for plaintiff.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for defendant.

PETERSON, J.

Tanzer, J., dissenting.

## PETERSON, J.

This original habeas corpus proceeding was filed in this court pursuant to Article VII, section 2, (Amended) of the Oregon Constitution on July 23, 1982. The plaintiff, an inmate of the Lane County Jail, is in the custody of the defendant, the Lane County Sheriff. Plaintiff contends that he should be released because the security amount set for his release, $3 million, is excessive in violation of his rights under ORS 135.230-135.295, Article I, section 16, of the Constitution of Oregon and amendment VIII to the Constitution of the United States.

The writ issued on July 23, 1982 (ORS 34.370), and pursuant to the writ, the defendant produced the plaintiff before this court on July 27, 1982 (ORS 34.420), at which time the court inquired into the circumstances of plaintiff's imprisonment (ORS 34.580). We found that the plaintiff was illegally restrained of his liberty because the security amount was excessive and ordered that plaintiff be released from custody at 2:00 p.m. on the following day, July 28, 1982, unless in the interim another release decision had been made which was "reasonably designed to assure the plaintiff's appearance within the criteria of ORS 135.245, 135.250, 135.260, and 135.265." This opinion is in explanation of the court's disposition of the matter.

Plaintiff was arrested in Lane County, Oregon, on June 26, 1982, and charged with the crimes of Unlawful Possession of a Controlled Substance, ORS 475.992 (a Class C Felony) and Conspiracy to Deliver a Controlled Substance, ORS 161.450, ORS 475.992 (a Class B Felony). Following plaintiff's completion of a security release questionnaire, a Lane County custody release assistance officer[1]

---

[1] ORS 135.235 provides for the appointment of release assistance officers:

"(1) The presiding circuit court judge of the judicial district may designate a Release Assistance Officer who shall, except when impracticable, interview every person detained pursuant to law and charged with an offense.

"(2) The Release Assistance Officer shall verify release criteria information and may either:

"(a) Timely submit a written report to the magistrate containing, but not limited to, an evaluation of the release criteria and a recommendation for the form of release; or

set the security amount for the plaintiff at $3 million (which would require, under ORS 135.265, a deposit of "10 percent of the security amount," $300,000, to obtain plaintiff's release). Plaintiff's motion for release on recognizance, ORS 135.245(3), or, in the alternative, for a conditional release, ORS 135.260, was denied, and the security amount was not reduced. During the hearing on plaintiff's motion for release the judge stated:

> "Well, from the information I've received, the gentleman has absolutely no ties to the State of Oregon. I don't think he qualifies for an ROR [release on recognizance] * * *.

> "I think he's a severe risk. No ties to Oregon. Traveled a lot. Been an international traveler and has been jailed, rightly or wrongly, in a foreign country for drug trafficking.

> "* * * * *.

> "I'm not prepared to ROR him under any condition. In other words, I'm not prepared to release him without the payment of a significant amount of security, under anything. I think he's a severe risk."

Although the circuit court's conclusion that a security release was appropriate and necessary was permissible under the statute and the record, as we explain below, the security amount of $3 million was in excess of the minimum "amount that will reasonably assure the defendant's appearance," ORS 135.265(1).

ORS 135.245 provides:

> "Except [in cases involving murder or treason,] a person in custody shall have the immediate right to security release[2] or shall be taken before a magistrate without undue delay * * *.

> "* * * * *

---

> "(b) If delegated release authority by the presiding circuit court judge of the judicial district, make the release decision.

> "(3) The presiding circuit court judge of the judicial district may appoint release assistance deputies who shall be responsible to the Release Assistance Officer."

[2] "Security release" is defined by ORS 135.230(8) as "a release conditioned on a promise to appear in court at all appropriate times which is secured by cash, stocks, bonds or real property."

"(3) The magistrate shall impose the least onerous condition reasonably likely to assure the person's later appearance. A person in custody, otherwise having a right to release, shall be released upon his personal recognizance[3] unless release criteria show to the satisfaction of the magistrate that such a release is unwarranted.[4]

"(4) Upon a finding that release of the person on his personal recognizance is unwarranted, the magistrate shall impose either conditional release[5] or security release.

---

[3] "Personal recognizance" is defined by ORS 135.230(3) as "the release of a defendant upon his promise to appear in court at all appropriate times."

[4] ORS 135.230(6) defines "release criteria" as follows:

"(6) 'Release criteria' includes the following:

"(a) The defendant's employment status and history and his financial condition;

"(b) The nature and extent of his family relationships;

"(c) His past and present residences;

"(d) Names of persons who agree to assist him in attending court at the proper time;

"(e) The nature of the current charge;

"(f) The defendant's prior criminal record, if any, and, if he previously has been released pending trial, whether he appeared as required;

"(g) Any facts indicating the possibility of violations of law if the defendant is released without regulations;

"(h) Any facts tending to indicate that the defendant has strong ties to the community; and

"(i) Any other facts tending to indicate the defendant is likely to appear."

[5] "Conditional release" is defined by ORS 135.230(1) as "a nonsecurity release which imposes regulations on the activities and associations of the defendant."

ORS 135.260 provides:

"Conditional release may include one or more of the following conditions:

"(1) Release of the defendant into the care of a qualified person or organization responsible for supervising the defendant and assisting him in appearing in court. The supervisor shall not be required to be financially responsible for the defendant, nor to forfeit money in the event he fails to appear in court. The supervisor, however, shall notify the court immediately in the event that the defendant breaches the conditional release.

"(2) Reasonable regulations on the activities, movements, associations and residences of the defendant.

"(3) Release of the defendant from custody during working hours.

"(4) Any other reasonable restriction designed to assure the defendant's appearance."

"* * * * *

"(6) This section shall be liberally construed to carry out the purposes of relying upon criminal sanctions instead of financial loss to assure the appearance of the defendant."

Those statutory provisions "are premised upon Oregon Const. Art. I § 16: 'excessive bail shall not be required * * *.' " Proposed Or Crim Proc Code 139, Commentary, § 240 (1972). The commentary to the proposed code states that the Oregon Constitution, Article I, section 14, "requires that 'Offences [sic] except murder, and treason, shall be bailable by sufficient sureties.' " Id. The commentators explained ORS 135.245 as follows:

"Section 240 [ORS 135.245] * * * creates the presumption of personal recognizance release which can be rebutted by a showing that release criteria indicate the defendant is not reasonably likely to appear.

"The section gives the magistrate authority to fashion a form of release that will reasonably assure the appearance of the defendant in court. Either a security release or a conditional release may be used by the magistrate, keeping in mind that criminal sanctions should be primarily used instead of financial loss to assure the appearance of the defendant." Proposed Or Crim Proc Code 138, Commentary, § 240 (1972).

"* * * * *

"The imposition of the least onerous condition that will assure the defendant's appearance is the statutory response to the prohibition of excessive bail * * *." Id. at 139.

The security release of a defendant is governed by the provisions of ORS 135.265:

"(1) If the defendant is not released on personal recognizance under ORS 135.255, or granted conditional release under ORS 135.260, or fails to agree to the provisions of the conditional release, the magistrate shall set a security amount that will reasonably assure the defendant's appearance. The defendant shall execute the security release in the amount set by the magistrate.

"(2) The defendant shall execute a release agreement and deposit with the clerk of the court before which the proceeding is pending a sum of money equal to 10 percent of the security amount, but in no event shall such deposit

be less than $25. The clerk shall issue a receipt for the sum deposited. Upon depositing this sum the defendant shall be released from custody subject to the condition that the defendant appear to answer the charge in the court having jurisdiction on a day certain and thereafter as ordered by the court * * *."

As to ORS 135.265, the drafters of the proposed criminal procedure code stated:

"The Commission intends that the security amount set by the magistrate be the amount the magistrate considers reasonable to assure the appearance of the defendant. The Commission discourages the concept of establishing the security amount 10 times the amount that the magistrate considers necessary to assure appearance because the defendant may only deposit 10 percent of the security amount. The concept of setting the security amount 10 times higher would be counter to the intent and spirit of this Article and should not be followed." Proposed Or Crim Proc Code 143-44, Commentary, § 244 (1972).[6]

---

[6] The dissent suggests that $3 million is a reasonable amount because

"* * * the trial court was entitled to infer that petitioner is involved in cocaine trafficking at a level involving large sums of money and that it might well be worth anything less than $300,000 cash security deposit and the risk of a probably uncollectible $2.7 million debt for petitioner to flee and avoid a potentially long-term prison sentence. * * *"

This smacks of the proposition that the security amount should be 10 times the amount necessary to assure appearance.

Professor (now Judge) William Snouffer has written:

"The legislature placed great faith in the judiciary to implement honestly and diligently the policy of Article 8 that security amounts be set at the minimum level that reasonably will assure the defendant's appearance in court following his release from custody. Because of the provision which permits a defendant to be released upon depositing ten percent of the security amount set by the magistrate, the argument frequently was made to the legislature that judges would be inclined to increase security amounts by ten times that which has prevailed in the past few years. The argument, which essentially is an argument that judges will not follow their sworn duty to uphold the law, was voiced by skeptical private attorneys. Predictably, it also was an argument made by bail bondsmen and by representatives of bail bondsmen who grossly distorted the available statistics. And it was voiced ironically, and perhaps pessimistically, by some members of the judiciary.

"The available data tend to indicate that it is not necessary to multiply customary security amounts in order to achieve subsequent court appearances. Published data indicate that Illinois, the first state to adopt the ten per cent system, has had an acceptable rate of return of defendants without the need to resort to multiplied bail settings. While the Commission recognized the

We have before us the petition for a writ of habeas corpus, which included by reference the district attorney's information, a police report, the security release questionnaire (which included a financial statement), and the affidavit of plaintiff's attorney. The defendant, in his return, does not controvert any of the facts contained in those documents. Appended to the defendant's return was a copy of a transcript of proceedings. These documents comprise the record in this case, to which we turn in examining the facts concerning the cause of the plaintiff's imprisonment. ORS 34.580.

Plaintiff is 39 years old with a "doctorate" in pharmacy and he was honorably discharged from the Army Medical Service Corps. He has no prior criminal record, although he was incarcerated for 39 months in Peru on a cocaine trafficking charge of which he was never convicted. Before his arrest he was not uncooperative and freely admitted that he was to have received $2,500 for setting up a drug transaction between two other persons.

His recent employment record is sporadic. He claims that he was either employed or had been offered employment in Southern California just before his arrest. His attorney represented that plaintiff, if released, would live with either his father or a long-time friend in California while awaiting trial. The security release questionnaire executed by plaintiff, under oath, shows that his total income for 1981 was $2,200, with approximately the same amount in 1982. His total assets, including a tax refund due but unpaid, were less than $1,000 and he reported that he had less than $200 cash with which to secure his release.

Applying the release criteria of ORS 135.230(6) to the facts, we reach these conclusions: The plaintiff's previous employment status was not stable. Although he claimed to be employed, his most recent employment began in June, 1982, and the job that he had before then lasted less than two months. He had very little income during

argument, it nevertheless decided that the question of judicial inflation of security amounts could not be dealt with by statute. * * *" W. Snouffer, *An Article of Faith Abolishes Bail in Oregon,* 53 Or L Rev 273, 307-308 (1974). (Footnotes omitted.)

1981 and 1982. He has no close family relationships in Oregon, and there is little evidence of close family relationships elsewhere. He had no fixed residence of any duration. He was unsure of his present address. On his questionnaire he described his address as "610 or 615 (?) Rossmore, Hollywood, Calif." He had lived there for six weeks. He had been in Oregon for but two days. He listed no persons who might assist him in attending court at the proper time, and he had no strong ties to the community. He was charged with two felonies, felonies which, if guilt is found on both, and consecutive sentences are imposed, are punishable by imprisonment totaling 15 years. ORS 161.605. Although the defendant has no previous convictions, there is evidence of previous incarceration on a similar charge, and continued association with persons with whom he had previously been incarcerated on criminal charges in Peru.

So far as the existence of "facts indicating the possibility of violations of law if the defendant is released without regulations," ORS 135.230(6)(g), it is not mere conjecture to conclude that defendant might be involved in drug traffic, if released. The record amply supports the conclusion of the Lane County magistrate that if the defendant were to be released, a security release should be imposed.

Setting the security amount has been, and continues to be, a matter of trial court discretion. *State v. Keller*, 240 Or 442, 452, 402 P2d 521 (1965). In examining the reasonableness of the security amount, we again look to the release criteria listed in ORS 135.230(6). Here, too, the seriousness of the charges, the plaintiff's lack of stable employment or personal relationships, the lack of strong ties to the community and his admitted association with drug trafficking suggest a substantial security amount. On the other hand, he has no prior convictions; he has apparently cooperated with the police; the imposed charges are for nonviolent crimes; there is no evidence in this record that he had personal possession of large amounts of drugs; and there is no evidence that his assets are so substantial that the forfeiture of an amount less than $300,000 and the possibility of an additional substantial judgment would not be a sufficient inducement to assure his appearance.

Our function is to decide only whether the security amount is excessive. It is. On the record before us, including the virtually total absence of any findings by a magistrate to support the conclusion that $3 million is such an amount as will "reasonably assure the defendant's appearance," we are convinced that bail of $3 million is an amount which, if not designed to make it impossible, as a practical matter, for the prisoner to secure his release, was unreasonably large and impermissible under ORS 135.265(1).[7] A security amount intentionally set so high that it will be beyond reach of the defendant will, beyond question, assure the defendant's appearance, because the defendant will remain in custody. But setting a security amount with that goal in mind is not consistent with the statute. It is implicit in ORS 135.265(1) that the security amount be set at the lowest amount that will "reasonably assure defendant's appearance." The mandate of ORS 135.245(3) that the magistrate "shall impose the least onerous condition reasonably likely to assure the person's later appearance" applies not only to the type of release—personal recognizance, conditional release, or security release—but also to the amount of the security release.

We are convinced that, on the record before us, setting the security release amount at $3 million is excessive. Even though, as stated by the magistrate, "* * * he's a severe risk. No ties to Oregon. Traveled a lot. Been an international traveler and has been jailed, rightly or wrongly, in a foreign country for drug trafficking," the evidence does not support the conclusion that a $3 million amount is required to "reasonably assure the defendant's appearance."

---

[7] This statement from *Owens v. Duryee,* 285 Or 75, 80, 589 P2d 1115 (1979), is apposite:

"*Knutson v. Burks,* No. 25680, decided March 14, 1978, without opinion, is an example of a habeas corpus proceeding in which we concluded the plaintiff was held illegally. We determined there were no circumstances which would justify the trial court's order setting security in the sum of one million dollars while the prisoner was awaiting trial on a drug offense. Bail may not be set at an amount chosen in order to make it impossible, as a practical matter, for a prisoner to secure his release."

The plaintiff was entitled to be discharged.[8]

**TANZER, J.,** dissenting.

The majority orders the release of petitioner in habeas corpus upon a holding as a matter of law that the amount of $3 million bail is excessive. Regardless of whether any of us, sitting as trial judges, would set bail that high, I cannot join the holding that it is constitutionally excessive as a matter of law.

According to the petition, the trial court had before it information indicating that the petitioner has no connections to Oregon and intended to return to California pending these proceedings. On his application for release on recognizance, petitioner indicates that his total net income last year was $2,200 and that it was about the same this year, which, without further explanation, might cause the trial judge to be skeptical of petitioner's candor. Police reports before the trial court and attached to the petition indicate that petitioner had been jailed in Peru for cocaine trafficking for 39 months, where he met one of his current associates. Upon his arrest, petitioner admitted, among other things, that he was to be paid $2,500 for setting up a sale of a kilo of cocaine for $63,000. The seller was his Peruvian jail associate who had been furnished four kilos of cocaine by a Columbian national at a price of $53,000 to $55,000 per kilo. The trial court may reasonably infer that a transaction of that magnitude is not an isolated or casual one.

From this information, the trial court was entitled to infer that petitioner is involved in cocaine trafficking at a level involving large sums of money and that it might well be worth anything less than $300,000 cash security deposit and the risk of a probably uncollectible $2.7 million debt for petitioner to flee and avoid a potentially long-term prison sentence. A trial judge could reasonably infer that

---

[8] As stated in the text, in our order in this case, we ordered that plaintiff be released from custody unless another release decision had been made by 2 p.m. the following day. In making this order, we had in mind the possibility that a further hearing could be conducted during that time, to reduce the security amount to a reasonable amount under ORS 135.265(1).

petitioner's associates would find it worth something less than $300,000 security deposit to allow petitioner to flee, whether from loyalty or from a desire to eliminate him as a potential witness. Petitioner's lack of any roots anywhere, let alone in Oregon, together with information indicating high-level, big money, international traffic in cocaine make the trial court's determination reasonable.

Particularly, I cannot join in a majority holding that the trial court was unreasonable as a matter of law unless it is able to come up with a figure which it deems to be the maximum reasonable bail figure or with conditions of release which are reasonable under the circumstances. This they cannot do. In the absence of their ability to do so, I am unwilling to say that the trial court order, and hence petitioner's restraint, was unlawful.