[No. 60383-9. En Banc. November 22, 1994.]

DONALD L. WESTERMAN, ET AL, *Appellants*, v.
CHRISTINE CARY, *as Judge of the Spokane County
District Court*, ET AL, *Respondents*.

*Donald C. Brockett, Prosecuting Attorney,* and *James P. Emacio* and *Ronald P. Arkills, Deputies,* for appellants.

*Richard Cease, Public Defender, Donald L. Westerman, Chief Deputy,* and *Jay Ames* and *Joseph Miller, Assistants,* of *Spokane County Public Defender,* for appellants Westerman.

*Carl E. Hueber* and *Winston & Cashatt,* for respondents.

*Katherine S. Knox* on behalf of Washington Defender Association, amicus curiae for appellants Westerman.

*L. Diane Emmons* on behalf of Young Women's Christian Association, amicus curiae for respondents.

MADSEN, J. — This case revolves around the Spokane County District Court's issuance of a general order providing that domestic violence offenders be detained in custody pending their first appearance in court. Under the previous bail schedule provision, such offenders would be eligible for release on bail preset by the court. Prior to this court accepting review, the District Court replaced the general order

with a similar order which also provides for detention without bail pending the first court appearance. The parties raise the question of mootness as well as federal and state constitutional issues regarding bail, due process, equal protection, and unreasonable seizure. In addition, Prosecutor Donald C. Brockett (Brockett) and the Honorable Christine Cary of the Spokane County District Court (Cary or the District Court) argue issues regarding Brockett's disqualification, the appointment of a special prosecutor, the award of attorney fees to the special prosecutor at public expense, and the denial of Brockett's motion to intervene.

## Facts

On October 14, 1992, Spokane County's then-presiding district court judge, Christine Cary, issued a general order entitled "Domestic Violence Offense — Mandatory Court Appearance — No Bail".[1] The order provides:

> Any person arrested for a crime classified under Section 10.99 of the Revised Code of Washington as Domestic Violence shall be held in jail without bail pending their first appearance.
>
> The Mandatory Court Appearance — No Bail pending a defendant's first appearance shall apply to all offenses listed under Section 10.99 of the Revised Code of Washington irrespective of their classification as a Felony, Gross Misdemeanor, or Misdemeanor.

Clerk's Papers (CP), at 10. By requiring that bail be set at the first appearance, the District Court sought to amend the County's bail schedule and pretrial release procedures to conform with the Washington State Supreme Court's amendment of CrRLJ 3.2. Under the previous procedure, jail personnel were allowed to determine bail according to a preset bail schedule and grant release prior to an individualized judicial determination or a preliminary court appearance. The District Court issued the order as the first of a number of changes intended to bring the court's procedures into conformance with CrRLJ 3.2. The order does not specify the length of detention; however, CrRLJ 3.2.1(d)(1) requires

---

[1]Unless otherwise specified, order or general order refers to Judge Cary's general order.

that an accused "detained in jail must be brought before a court of limited jurisdiction as soon as practicable after the detention is commenced, but in any event before the close of business on the next court day". An on-call judge was available under the order to set bail prior to the preliminary appearance in appropriate cases.

On October 15, 1992, Prosecutor Brockett advised Sheriff Larry Erickson (Erickson) to disregard the order because he believed it would violate arrestees' constitutional right to bail and would expose the County to liability. The record suggests that this advice was unsolicited. At a meeting the next day, Brockett repeated this position to several members of the District Court. This advice was contrary to the advice the District Court had received from his office previously. Sheriff Erickson told the judges at the meeting that he would not obey the order based on Brockett's advice. The District Court then asked Prosecutor Brockett for a brief outlining his concerns with the legality of the order. Brockett refused, suggesting instead that the District Court write a brief justifying its position to him. At the meeting, the District Court discussed its interest in conforming with CrRLJ 3.2. Brockett said that he believed that CrRLJ 3.2 was unconstitutional and would not defend the order on that basis. At a meeting on October 21, 1992, the District Court concluded that Prosecutor Brockett's prior representation of Sheriff Erickson "created a conflict of interest which precluded his representation of the District Court". CP, at 400. "A motion was made, seconded, and passed to hire outside independent counsel. The Executive Committee was directed to select counsel to best serve the interests of the District Court." CP, at 400.

On October 22, 1992, the Spokane County public defender's office filed an emergency application for writ of review and for immediate stay of the order in superior court. The public defender's office argued that the order was unconstitutional and was not adopted in accordance with procedures required by the court's own local rules. The

Superior Court issued a writ of review and granted a stay that same day.

On October 23, 1992, the executive committee voted to retain Carl Hueber (Hueber) as independent counsel to defend the court in all matters pertaining to the bail schedule, including, but not limited to, the public defender's suit. Judge Cary wrote to one of the county commissioners and suggested that the cost of such counsel be "taken from the Prosecuting Attorney's budget for conflict cases". CP, at 430-31. Hueber filed a notice of appearance on the District Court's behalf on October 26, 1992. In a letter to Brockett dated October 29, 1992, Judge Cary explained the court's belief that a conflict existed that disabled him and his office from representing the court in this matter under RCW 36.27.030.

In his response dated November 2, 1992, Brockett disagreed, stating that he was the only legal adviser for all county government and that his position was the position of the county as a whole: "county government can only be represented, in a *legal setting*, by the legal position taken by the prosecuting attorney with regard to any particular matter". CP, at 439. In his opinion, those officials who disagree with the prosecutor's position could hire their own counsel, but not at taxpayer expense. He further stated that he did not believe any conflict of interest was involved and that no "disability" existed under RCW 36.27.030. CP, at 439. Hueber and Brockett also exchanged letters on these issues. See CP, at 441-51. On November 3, 1992, Brockett filed a Notice of Appearance on behalf of the District Court. On November 12, 1992, Hueber, on behalf of the District Court, filed a motion to disqualify the prosecuting attorney and to confirm retention of independent counsel at public expense.[2] The Superior Court denied the motion, stating that *Hoppe v. King Cy.*, 95 Wn.2d 332, 622 P.2d 845 (1980) controlled.

The matter then proceeded on the merits. On December 14, 1992, amicus curiae, the Young Women's Christian

---

[2]On that same day, the district court judges wrote Brockett another letter again stating that they believed that ethics dictated Brockett's withdrawal.

Association (YWCA), filed a memorandum of authorities in support of the order. On December 16, 1992, Brockett filed a memorandum of authorities on behalf of the County arguing that the order was invalid. Representing the District Court, Hueber filed a response in support of the order the same day.

On December 24, 1992, the Superior Court found that the order was not unconstitutional on either federal or state grounds. However, the court found that the order improperly amended Spokane County District Court Rule LCrRLJ 3.2(m), (o) since it had not first been submitted to the county bar association as required by Spokane County District Court Rule LARLJ 2(c). The court set aside the order.

Hueber filed one motion on December 30, 1992, for an order directing payment of attorney fees by Spokane County and another on January 5, 1993, for a clarification of the Superior Court's decision. Specifically, the District Court questioned whether the bail schedule itself was invalid under the ruling because it had not been formally adopted as a local rule. On January 11, 1993, Judge Donohue gave an oral ruling. He then issued a memorandum decision dated January 29, 1993. Therein the court revised its earlier oral decision regarding Brockett's representation of the District Court, stating that ethically Brockett should have withdrawn and that his failure to do so amounted to being temporarily unable to perform his duties. The Superior Court further stated that the District Court's counsel should be compensated in an amount not to exceed $5,000. The judge gave no reasons for this maximum amount. As for the validity of the bail schedule, the court found that the schedule was not part of the local rules.

On February 18, 1993, Brockett filed a motion for reconsideration of the memorandum decision. The District Court filed a motion to reconsider the amount of the attorney fee award and a motion to compel formal withdrawal of the prosecuting attorney the same day. On March 4, 1993, the court addressed attorney fees, stating that it considered all the factors under the Rules of Professional Conduct when

setting the maximum amount. The court also agreed to award costs if presented with a cost bill. Judge Donohue also denied Brockett's reconsideration motion.[3]

On March 19, 1993, Brockett filed a motion to intervene pursuant to CR 24(a)(2) and CR 24(b)(2). CP, at 300-01. On March 26, 1993, the Superior Court denied the motion. That same day, the court also entered a judgment for costs of $2,844.26 and attorney fees of $5,000. The court then entered a final order on March 31, 1993, incorporating all its previous orders. On April 7, 1993, the court awarded Hueber attorney fees of $875 for the intervention motion.

Brockett sought direct appeal of the Superior Court's orders, specifically requesting review of the constitutionality of the order, the denial of the Motion To Intervene, the appointment of a special prosecutor, and the award of attorney fees and costs at public expense. The District Court sought cross review of the final order. Westerman sought review of the constitutionality of the order by the Court of Appeals and his appeal was transferred to this court. Amici curiae YWCA and the Washington Defender Association (WDA) are only involved in the issues regarding the order.

During the interim, the new district court presiding judge, Salvatore Cozza (Cozza), issued General Bail Order 01-93 containing a new bail schedule on April 15, 1993. The general bail order provides for detention without bail of all felony probable cause arrestees pending their first appearance in court. Misdemeanor domestic violence and harassment probable cause arrestees were permitted release upon the posting of a cash bail of $1,000 or $1,500 respectively. However, on September 2, 1993, Presiding Judge Cozza issued Supplement to General Bail Order 02-93 providing that misdemeanor domestic violence and harassment probable cause arrestees are to be held in jail pending their first court appearance absent a contrary judicial order.

Several bondspersons and attorneys filed a petition in Spokane County Superior Court on April 23, 1993, for a writ

---

[3]No record exists of any decision directly addressing the motion to compel withdrawal.

of mandate that would force Judge Cozza to revoke the General Bail Order and prevent Sheriff Erickson from enforcing it based on constitutional and other grounds. See Petition for Writs of Mandate and Prohibition and Motion for an Order Establishing a Bond Schedule for Non-Warrant Custodial Arrests, Case No. 93 2 01896-1. That same day, the Superior Court issued a writ of mandate and of prohibition to Sheriff Erickson, commanding him either to not enforce the General Bail Order or to show cause. See Writ of Mandate and of Prohibition, at 2. The current status of this action is uncertain, but it is apparently still active.

## Analysis

### I

### Mootness

■ "It is a general rule that, where only moot questions or abstract propositions are involved, or where the substantial questions involved in the trial court no longer exist, the appeal . . . should be dismissed." *Sorenson v. Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972); *see also Hart v. Department of Social & Health Servs.*, 111 Wn.2d 445, 447, 759 P.2d 1206 (1988). A case is moot where "a court can no longer provide effective relief". *Orwick v. Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984). However, a recognized exception permits an appellate court, at its discretion, to "retain and decide an appeal which has otherwise become moot when it can be said that matters of continuing and substantial public interest are involved". *Sorenson*, at 558; *see also Hart*, at 447. Three factors in particular are determinative: "(1) whether the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur". *Hart*, at 448. A fourth factor may also play a role: "the level of genuine adverseness and the quality of advocacy of the issues". *Hart*, at 448. This factor serves to limit review to cases in which a hearing on the merits has occurred. *Orwick*, at 253-54. Lastly, the court may consider "the likelihood that the issue will escape

review because the facts of the controversy are short-lived". *Seattle v. State*, 100 Wn.2d 232, 250, 668 P.2d 1266 (1983) (Rosellini, J., dissenting).

The issues regarding Judge Cary's order are moot because it has been replaced by another order. Therefore, no effective relief from the order can be granted. Nevertheless, review is justified in this case. The issues are public in nature. As Judge Cozza's order demonstrates, guidance in this area is both desirable and necessary and the issue is likely to recur. With one amicus for each side and all of the parties, there is genuine adverseness on the issues. Moreover, a hearing has been held on the merits and the briefs before this court are of good quality. Lastly, the issue of bail is one which will escape review because the facts of the controversy are short lived: an arrestee will be detained only pending a preliminary appearance. We will therefore proceed with review.

## II

### Article 1, Section 20 of the Washington State Constitution

Unlike the federal constitution, Washington's constitution has a specific provision creating a right to bail. Article 1, section 20 of the Washington Constitution provides that "[a]ll persons charged with crime shall be bailable by sufficient sureties, except for capital offenses when the proof is evident, or the presumption great".[4] The issue presented in this case is the point at which the right to bail attaches. Westerman contends that the right attaches immediately following arrest. WDA argues that the right attaches within a reasonable time following the incidents of arrest. The District Court and the YWCA argue that the right does not attach until a judicial determination can be made.

---

[4]The corresponding federal provision is the Eighth Amendment which prohibits excessive bail but does not grant a right to bail per se. *See United States v. Salerno*, 481 U.S. 739, 752-54, 95 L. Ed. 2d 697, 107 S. Ct. 2095 (1987). In fact, in *Salerno* the United States Supreme Court found that the Eighth Amendment does not indicate whether bail should be available at all or whether all arrests must be bailable. Under the Washington State Constitution, article 1, section 14 more closely mirrors this federal provision.

When interpreting a constitutional provision, we seek to ascertain and give effect to the manifest purpose for which it was adopted. *State v. Belgarde*, 119 Wn.2d 711, 724, 837 P.2d 599 (1992); *Seattle v. State, supra* at 240. We will presume the language carries its ordinary and popular meaning, unless shown otherwise. *State ex rel. Graham v. Olympia*, 80 Wn.2d 672, 676, 497 P.2d 924 (1972). When construing a statute or constitutional provision, the context in which the language arises should also be considered. *Dawson v. Daly*, 120 Wn.2d 782, 791, 845 P.2d 995 (1993). To understand what the framers intended, we look to the right as it existed at the time of the constitution's adoption. *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 645, 771 P.2d 711, 780 P.2d 260 (1989).

Westerman argues that the "charged" language is determinative. While the provision uses the language "charged with crime", we find that this language was not intended to trigger the point at which the right attaches. Rather, the phrase "charged with crime" only modifies the word "persons". This is evidenced by the fact that the drafters changed the language of the proposed section 20 which previously had said "all prisoners" to the current language of "all persons charged with crime". *Journal of the Washington State Constitutional Convention, 1889*, at 509 (Beverly P. Rosenow ed., 1962); *They All Talk*, Spokane Falls Rev., July 30, 1889, at 1, 4. The reason for the substituted language was not articulated; however, it is significant that one was merely substituted for the other. Because the phrase "charged with crime" modifies "persons", we conclude that the framers chose this language to describe the status of persons entitled to bail rather than the time of entitlement. Furthermore, the time of charging makes little practical sense as the triggering point for the right given the context in which the question of bail arises. When an arrest is made pursuant to a warrant, charges will have been filed and the judge issuing the warrant will determine probable cause and set bail. However, when an arrest is made without a warrant, charges may or may not be filed prior to a preliminary

court appearance which must be held by the next judicial day, or in any event, within 48 hours. CrRLJ 3.2.1; 1 Linda S. Portnoy & Eileen P. Farley, *Washington Criminal Practice in Courts of Limited Jurisdiction* §§ 6.01-6.02 (1993); *see also County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57, 114 L. Ed. 2d 49, 111 S. Ct. 1661 (1991). Charges may not be filed for up to 72 hours (not including Saturdays, Sundays, or holidays) after the arrest. CrRLJ 3.2.1(f); CrR 3.2B(c). This may be hours after the accused's preliminary appearance where bail or release could have been determined.

While we reject the time of charging as the triggering point, the language of the provision alone provides no clear answer. We must then look to the context in which the provision arose to determine the drafters' intent. Washington's provision was based on similar provisions in the Oregon[5] and Indiana state constitutions. *Journal of the Washington State Constitutional Convention, 1889*, at 509. The language of these states' provisions is more supportive of Westerman's position that the right to bail is triggered by charging because it focuses more clearly on the offense itself: "Offences (sic), except murder, and treason, shall be bailable by sufficient sureties. Murder or treason, shall not be bailable, when the proof is evident, or the presumption strong." Or. Const. art. 1, § 14; *see also* Ind. Const. art. 1, § 17 ("Offenses, other than murder or treason, shall be bailable by sufficient sureties. Murder or treason shall not be bailable, when the proof is evident, or the presumption strong."). Although Oregon and Indiana courts have not addressed the precise issue before us, the case law in both states implies that even under provisions which link the right to bail to the offense, this right is only a right to bail set by a judicial officer. *See Green v. Petit*, 222 Ind. 467, 472, 54 N.E.2d 281 (1944) (stating that the amount of bail is a matter for judicial decision); *Gregory v. State ex rel. Gudgel*, 94 Ind. 384,

---

[5]Article 1, section 14 of the Oregon Constitution is particularly relevant because it was contained in whole in Washington's proposed constitution. *See* W. Lair Hill, *Washington: A Constitution Adapted to the Coming State* § 14, at 7 (1889).

389 (1884) (finding that the act of determiningbail is properly a judicial one which cannot be delegated); *Mott v. State*, 490 N.E.2d 1125 (Ind. Ct. App. 1986); *In re Liberman*, 293 Or. 457, 465, 650 P.2d 83 (1982) (stating that the setting of the amount of bail is a matter of trial court discretion); *see also In re Carden*, 291 Or. 515, 635 P.2d 341 (1981), *cert. denied sub nom. Barnes v. Carden*, 455 U.S. 921 (1982); *Sexson v. Merten*, 291 Or. 441, 631 P.2d 1367 (1981); *In re Knutson*, 287 Or. 489, 601 P.2d 129 (1979); *State ex rel. Connall v. Roth*, 258 Or. 428, 482 P.2d 740 (1971).

The history of bail in Washington is in agreement with this proposition. At the time the constitution was adopted, the Code of 1881 provided that bail could be granted only by judges and the amount set on a case-by-case basis. Section 778 of the Code of 1881 is similar to the adopted version of Const. art. 1, § 20 and reads:

> Every person charged with an offense except that of murder in the first degree, where the proof is evident or the presumption great, may be bailed by sufficient sureties, and bail shall justify and have the same rights as in civil cases, except as otherwise provided in this chapter: *Provided,* That all persons accused of crime in any court of this Territory, whether by indictment or otherwise, shall be admitted to bail *by the court,* where the same is pending, . . . and the bail bond in such cases shall be reasonable and *at the sound discretion of the court.*

(Italics ours.) *See also* Code of 1881, § 1028. The Code also provided for incorporation of the common law of England to the extent it was not inconsistent. Code of 1881, § 1. Under then-existing English law, bail was a judicial function and was comprised of three elements: "a right to bail, a habeas corpus procedure to convert this right into reality, and an excessive bail clause in the Bill of Rights to guard against judicial abuse". Chris W. Eskridge, *Pretrial Release Programming: Issues and Trends* 19 (1983).

■ Today, bail and release remain judicial functions. Bail schedules have been recently developed by many counties to allow earlier release.[6] However, these bail schedules are

---

[6]*See, e.g.,* Island County Bail Schedule (1979); Klickitat and Skamania Counties Bail Schedule (1990); Pierce County Bail Schedule (1979); Snohomish

developed and maintained by each county's judiciary. In short, "the fixing of bail and the release from custody traditionally has been, and we think is, a function of the judicial branch of government, unless otherwise directed and mandated by unequivocal constitutional provisions to the contrary". *State v. Smith*, 84 Wn.2d 498, 501, 527 P.2d 674 (1974).

██ This court has encouraged the giving of bail in proper instances because the State is relieved of the burden of keeping the accused and the innocent are set free. *See State v. Jackschitz*, 76 Wash. 253, 256, 136 P. 132 (1913); *State v. Johnson*, 69 Wash. 612, 616, 126 P. 56 (1912). However, we have never mandated bail schedules; this is a choice best left to the counties. Moreover, we have established detailed procedures which require judicial determinations of bail or release to be made no later than the preliminary appearance stage. Even where bail or release has been actuated under a bail schedule, our rules provide that the individual case must be reviewed by a judge at this initial appearance. *See* CrR 3.2; CrRLJ 3.2. The primary purposes of the preliminary appearance are a judicial determination of probable cause and judicial review of the conditions of release. The preliminary appearance must be held "as soon as practicable after the detention is commenced, . . . but in any event before the close of business on the next judicial day". CrR 3.2B; CrRLJ 3.2.1. When combining a probable cause determination, this must be accomplished within 48 hours. *County of Riverside*, 500 U.S. at 56-57.

Considering the history and case law regarding bail, as well as relevant court rules, we find that detention without bail pending a speedy judicial determination does not violate Const. art. 1, § 20. Under the current system where bail must be determined at the preliminary appearance, the right is sufficiently protected. We decline to extend the right to bail beyond what it has traditionally been: the right to a

County Bail Schedule (1983); Wahkiahum County Bail Schedule (1994); see also Br. of Amicus Curiae on Behalf of Wash. Defender Ass'n, app. 4 (surveying county bail policies and highlighting that several counties either have no bail schedule or do not preset a bail amount for certain offenses).

judicial determination of reasonable bail or release. We conclude, however, that such a determination must be made as soon as possible, no later than the probable cause determination, and, as with probable cause, may be determined by a judge prior to the preliminary hearing. Our decision today is not intended to foreclose the use of bail schedules, but rather to leave the choice to counties, balancing the flexibility that the county courts need with the interests of those detained.

Our result is further supported by the results of other states that have upheld similar constitutional provisions against challenge. *See State v. Wax*, 83 R.I. 319, 328, 116 A.2d 468 (1955) (within a reasonable time following arrest); *see also In re Underwood*, 9 Cal. 3d 345, 351, 508 P.2d 721, 107 Cal. Rptr. 401 (1973) (requiring bail hearing for release under state constitution). Likewise, courts of states which have legislative provisions similar to Washington's court rules (making release a judicial determination) have upheld such statutes. *See, e.g., In re Humphrey*, 601 P.2d 103, 108-10 (Okla. Crim. App. 1979) (also listing at least 35 states with provisions similar to that of Washington); *Martin v. State*, 517 P.2d 1389, 75 A.L.R.3d 941 (Alaska 1974).

We thus find the order constitutional under Const. art. 1, § 20 to the extent it conforms with this opinion. Because we hold that the right to bail attaches within 48 hours of arrest, we need not address the issue of excessive bail.

### III

### Substantive Due Process

■ Westerman argues that the order violates state and federal substantive due process. The right to bail is not affected here because we find that the right does not attach until the time of the preliminary appearance. However, "[a]n individual's liberty interest is important and fundamental". *In re Young*, 122 Wn.2d 1, 26, 857 P.2d 989 (1993). A government action affecting this fundamental right is constitutional only if it furthers compelling state interests and is narrowly drawn to serve those interests. *Young*, at 26.

■ ■ The government has compelling interests in preventing crime and ensuring that those accused of crimes are available for trial and to serve their sentences if convicted. The Fourth Amendment permits limited restraint on the liberty of an arrestee. It is well recognized that a police officer may detain an individual without a warrant if the officer has probable cause to believe that the arrestee committed an offense. *Gerstein v. Pugh*, 420 U.S. 103, 112-14, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975). To justify further pretrial detention, a fair and reliable determination of probable cause must be made by a judicial officer promptly following the arrest. *Gerstein*, at 124-25. The Supreme Court later elaborated on *Gerstein* by requiring that the determination of probable cause must be made within 48 hours and cannot be delayed unreasonably. *County of Riverside*, at 55-56; *Bell v. Wolfish*, 441 U.S. 520, 533-34, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979). Because pretrial restrictions on liberty pending a judicial determination of probable cause do not violate the Fourth Amendment, the Court has determined that such detention does not violate substantive due process unless it constitutes impermissible punishment. *Bell*, at 535; *see also United States v. Salerno*, 481 U.S. 739, 748, 95 L. Ed. 2d 697, 107 S. Ct. 2095 (1987) (recognizing that the "Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest" and finding that detention until trial on the basis of future dangerousness under the Bail Reform Act of 1984 does not violate substantive due process). Therefore, restrictions on liberty that comply with the Fourth Amendment and which do not constitute impermissible punishment do not violate substantive due process.

Given the limited nature of the detention and the legitimate reasons behind the order, we do not find that the order violates substantive due process. Under our ruling today, the order imposes no more significant restraint on liberty than that allowed by the Fourth Amendment under *Gerstein* and *County of Riverside* because the probable cause and release

hearing must be held within 48 hours of detention. After the preliminary appearance, release must be given to those arrestees. Furthermore, the District Court did not promulgate the order for the purposes of punishing domestic violence arrestees. The District Court only sought to insure individualized judicial determinations of bail and conditions of release in domestic violence cases.

## IV

### Equal Protection

██ ██ Westerman argues that because the general order is directed only at those arrested for domestic violence, it violates the equal protection clauses of the federal and state constitutions. The equal protection clauses of the Fourteenth Amendment to the United States Constitution and Const. art. 1, § 12 "require that ' "persons similarly situated with respect to the legitimate purpose of the law receive like treatment." ' " *State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987) (quoting *State v. Phelan*, 100 Wn.2d 508, 512, 671 P.2d 1212 (1983) (quoting *Harmon v. McNutt*, 91 Wn.2d 126, 130, 587 P.2d 537 (1978))). One of three tests may be used to determine whether this clause has been violated. First, the strict scrutiny test applies when a classification affects a suspect class or a fundamental right. *Schaaf*, at 17. "Under the strict scrutiny test, a law may be upheld only if it is shown to be necessary to accomplish a compelling state interest." *Schaaf*, at 17. Second, the intermediate scrutiny test may apply "in limited circumstances": the Supreme Court has applied this test for gender-based classifications; this court has applied intermediate scrutiny to classifications affecting "both an important right (the right to liberty) and a semi-suspect class not accountable for its status (the poor)". *Schaaf*, at 18. This test requires that the challenged law "fairly be viewed as furthering a substantial interest of the State' ". *Phelan*, at 512 (quoting *Plyler v. Doe*, 457 U.S. 202, 217-18, 72 L. Ed. 2d 786, 102 S. Ct. 2382 (1982)). Third, under the rational relationship test, "a law is subjected to minimal scrutiny and will be upheld ' "unless it rests on

grounds wholly irrelevant to the achievement of a legitimate state objective." ' " *Schaaf*, at 17 (quoting *Phelan*, at 512 (quoting *Nielsen v. Washington State Bar Ass'n*, 90 Wn.2d 818, 820, 585 P.2d 1191 (1978))).

> Under the rational basis test, a statute is constitutional if (1) the legislation applies alike to all persons within a designated class; (2) reasonable grounds exist for distinguishing between those who fall within the class and those who do not; and (3) the classification has a rational relationship to the purpose of the legislation. The classification must be " 'purely arbitrary' " to overcome the strong presumption of constitutionality applicable here.

*State v. Smith*, 117 Wn.2d 263, 279, 814 P.2d 652 (1991).

We believe the proper level of scrutiny to be applied to the order is embodied in the rational relationship test. As we determined earlier, compelling state interests justify detention incident to arrest. All warrantless arrestees are then entitled to a prompt judicial determination of probable cause. Under our holding today, there is no right to bail or release until this probable cause hearing. A court may, however, create a procedure for release prior to such a hearing. In this case, the court established a bail schedule. In formulating the schedule, the court distinguished between arrestees on the basis of offense classifications. Since there is no right to release or bail pending a preliminary appearance, these classifications do not implicate the fundamental right to liberty nor the right to bail. Therefore, classifications made within the schedule will be upheld against challenge if they satisfy the rational basis inquiry.

The order in this case survives minimal scrutiny. First, the challenged provision applies equally to all persons within the class. All domestic violence arrestees are held pending a judicial determination of bail. Second, the distinction between domestic violence arrestees and other warrantless arrestees rests on reasonable grounds. Spokane County has experienced "an increase in the level of violence associated with [domestic violence] crimes as well as increases in the number of repeat offenders" and approximately 50 percent of domestic violence arrestees released under the previ-

ous bail schedule would not have been released at that same bail amount had they had a judicial determination.[7] CP, at 259. Third, the court's purpose in detaining warrantless domestic violence arrestees pending judicial determination of bail is to make an individualized decision regarding bail and conditions of release. The classification thus furthers the court's purpose. Finally, the court issued the order as a first step in the process of amending the bail schedule to insure an individualized determination of release for all warrantless arrestees pursuant to CrRLJ 3.2. Equal protection does not require it to attack every aspect of the problem at once. *State v. Shawn P.*, 122 Wn.2d 553, 567, 859 P.2d 1220 (1993).

## V
### Preventive Detention

We are next asked to decide whether prevention, separate from considerations of flight, can justify detention of an individual pending a judicial bail determination. In *Salerno*, the United States Supreme Court found that while the traditional use of bail is to insure that an arrestee is available for further proceedings, the Eighth Amendment does not preclude the government from pursuing other compelling objectives through bail as long as the bail set is proportional. *Salerno*, at 753. Westerman argues that, unlike the federal provision, Const. art. 1, § 20 does not permit preventive detention pending a preliminary appearance.

 We do not see the order as operating to impose preventive detention. In *Salerno*, the Bail Reform Act of 1984 provided for the denial of bail in instances where a judicial officer finds that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community". *Salerno*, at 742 (quoting Bail Reform Act of 1984, 18 U.S.C. § 3142(e)). This, the defendants argued, was an impermissible preventive reason for determining bail. In this case, the order contains no such

---

[7] The Legislature also has recognized that protection from harassment and domestic violence are important governmental objectives. *See* RCW 10.14.010; RCW 10.99.010.

provision. Nor has Westerman established that the District Court intended that the order serve a preventive purpose. As the one challenging the order on constitutional grounds, Westerman bears this burden. *Granat v. Keasler,* 99 Wn.2d 564, 568, 663 P.2d 830, *cert. denied,* 464 U.S. 1018 (1983). Even assuming prevention was a consideration for the District Court, it was certainly not the primary focus of the order. Instead, the District Court primarily sought to comply with CrRLJ 3.2 by providing an opportunity for a judge to analyze each arrestee's circumstances and impose appropriate conditions of release. Because of this and our holding today that the right to bail does not attach until the preliminary appearance, we conclude that the order does not constitute preventive detention.

## VI

### Spokane County Code 1.32.050(a)

Brockett contends that the order violates Spokane County Code (SCC) 1.32.050(a). Since the trial court appointed a special prosecutor and denied Brockett's request for intervention, it is unclear whether he has standing to raise this issue. However, no party contests Brockett's standing. We therefore will address the issue.

SCC 1.32.050 reads:

**Rules — Right of bail.**

(a) Rule 1. Any person booked into jail on a bailable offense shall be permitted to post bail at any time, except that persons under the influence of alcohol shall be retained until they are capable of caring for themselves, unless an adult who is both willing and capable of caring for them escorts them from the jail.

(b) Rule 2. Any inmate who meets the existing requirements of the courts for release on his recognizance shall be so advised and shall be released at the earliest opportunity.

The provision allows those persons booked into jail on a "bailable offense" to post bail. The right to post bail, however, is restricted to those charged with "bailable" offenses. The term "bailable" means "capable of being bailed" or "entitled to bail". *Webster's Third New International Dic-*

*tionary* 163 (1986). Because bail or release must be determined by the court, the statute only applies when a judge has determined what bail is appropriate for the offense and/or set conditions of release. Because bail may be preset by schedule or determined at first appearance by the judge, this statute grants no greater right than that provided by the constitution. Thus, we hold that the order does not violate the county code.

## VII

### Appointment of the Special Prosecutor

RCW 36.27.030 enables a superior court to appoint a special prosecutor when the elected prosecutor is under a disability which prevents him from performing his responsibilities in a particular case. Brockett contends that he was under no such disability and the Superior Court erred in appointing a special prosecutor for the District Court. He claims that the County as a whole is his client and that he conducted his representation in a manner consistent with his statutory obligation. As a result, he states that the special prosecutor should not have been paid at public expense. The District Court, on the other hand, argues that the Superior Court improperly limited the fee award to $5,000.

A court can only appoint a special prosecuting attorney in instances where a statute provides for such an appointment. *Hoppe v. King Cy.*, 95 Wn.2d 332, 339, 622 P.2d 845 (1980); *State v. Heaton*, 21 Wash. 59, 62, 56 P. 843 (1899). RCW 36.27.030 provides:

> **Disability of prosecuting attorney.** When from illness or other cause the prosecuting attorney is temporarily unable to perform his [or her] duties, the court or judge may appoint some qualified person to discharge the duties of such officer in court until the disability is removed.

Under *Hoppe*, a prosecutor must have both a duty to represent an official and a disability that prevents the prosecutor from representing the official before the appointment of a special prosecutor is justified.

The prosecutor's duties are enumerated in RCW 36.27.020, which provides:

> The prosecuting attorney shall:
>
> . . . .
>
> (2) Be legal adviser to all county and precinct officers and school directors in all matters relating to their official business, and when required draw up all instruments of an official nature for the use of said officers;
>
> (3) Appear for and represent the state, county, and all school districts subject to the supervisory control and direction of the attorney general in all criminal and civil proceedings in which the state or the county or any school district in the county may be a party;
>
> (4) Prosecute all criminal and civil actions in which the state or the county may be a party, defend all suits brought against the state or the county, . . .
>
> . . . .
>
> (14) Seek to reform and improve the administration of criminal justice and stimulate efforts to remedy inadequacies or injustice in substantive or procedural law.

Pursuant to this statute the prosecutor has a duty to advise county officers. *In re Lewis*, 51 Wn.2d 193, 201, 316 P.2d 907 (1957). A superior court judge is both a state and a county officer. *State ex rel. Edelstein v. Foley*, 6 Wn.2d 444, 448, 107 P.2d 901 (1940). Under this statute, the prosecutor also has a "duty to appear for and represent the state and county in all proceedings in which they may be parties". *In re Lewis*, at 201. It is not clear from RCW 36.27.020 whether this duty extends to officials who are sued in their official capacity. It cannot be denied that the District Court and its judges are an arm of the County and that the County, while not named, is the real party in interest because it is the organ ultimately impacted by detention decisions. *See In re Lewis*, at 201. However, we need not decide this issue today. Brockett does not question his duty to represent the District Court. To the contrary, Brockett entered an appearance for Judge Cary and the District Court and undertook representation.

The question which Brockett raises is the form such representation must take. Brockett claims that he sets the objectives of representation for any county official or entity which is sued. He argues further that he is not

required to "defend" a county or state official or entity when he disagrees with the actions of either. Contrary to Brockett's position, RCW 36.27.020 does not except from the duty to defend those matters in which the prosecutor disagrees with his county or state client. Moreover, once representation is undertaken, the prosecutor is bound to act in accordance with the ethical rules governing representation which are "uniformly applied to all lawyers, regardless of the nature of their professional activities". Rules of Professional Conduct (RPC) Preliminary Statement. Under RPC 1.7(b) and RPC 1.15 an attorney is required to withdraw if representation of a client "may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests" unless the lawyer reasonably believes that the representation will not be adversely affected and the client is fully informed and consents in writing. Where representation of two different public bodies requires the prosecutor to take directly adversary positions in the same case, a conflict exists. *See* Washington State Bar Ass'n Ethics Opinions, No. 59 (1959) ("Obviously in situations which involve actual controversy (legal or factual) between the two public bodies, it would be the duty of the [prosecuting] attorney to withdraw from one representation."); *see also Heaton*, at 62 ("[the prosecutor's] discretion in the exercise of his [or her] duties should not be in any wise controlled by legal consequences unpleasant or unfavorable to himself [or herself]").

Brockett relies on *Hoppe* and argues that it is dispositive of this case. We disagree. First, in *Hoppe* the prosecutor never undertook representation, but instead denied a duty to represent the official. Second, the official in *Hoppe* requested that the prosecutor's office commence an action which the assessor had neither the authority nor the duty to pursue. In this case, Brockett appeared to defend the District Court when it was sued for an official action within its powers as District Court.

Failing to recognize his professional responsibility, Brockett chose to take a position contrary to that of his client.

Brockett's ability to represent the District Court was compromised even before the trial began. Prior to the lawsuit, Brockett told the District Court that he would be representing the Sheriff and had advised the Sheriff to disobey the order. At trial, he continued to represent the Sheriff even though the Sheriff was not a party to the suit and in the process abdicated his role to defend the District Court. The record is replete with instances of this conduct. For example, Brockett stated at the start that as representative of the District Court he would not ask the Sheriff any questions on deposition, but at the same time held himself out as the deponent's representative and directed the Sheriff not to answer questions by the special prosecutor on the basis of attorney-client privilege. Despite his position as attorney for the District Court, Brockett advocated and maintained a position directly contradictory to the District Court's, stating that the court's action was unconstitutional. In his brief, he acknowledges that his representation of Judge Cary and the court was inconsistent with their objectives of representation.

Given Brockett's actions both prior to and at trial, we believe Brockett had a conflict of interest that disabled him from representing the District Court in this case. In light of Brockett's position, the Superior Court was left with no other option but to appoint a special prosecutor to defend the District Court in its official action. RCW 36.27.030 provides the authority for expenditure of funds in a case such as this where the prosecutor is disabled as a result of conflict.

Questions remain regarding whether the fees in this case were reasonable and if fees should be awarded on appeal. First, RCW 36.27.030 states that the compensation of the special prosecutor is to be set by the court.[8] While this

---

[8]Specifically RCW 36.27.030 provides:

When any prosecuting attorney fails, from sickness or other cause, to attend a session of the superior court of his [or her] county, or is unable to perform his [or her] duties at such session, the court or judge may appoint some qualified person to discharge the duties of such session, and the appointee shall receive a compensation to be fixed by the court, to be deducted from the stated salary of the prosecuting attorney, not exceeding, however, one-fourth of the quarterly salary of the prosecuting attorney:

amount is within the court's discretion, it should be reasonable. This determination must be made by looking to the factors enumerated in RPC 1.5 as we stated in *Nichols v. Snohomish Cy.*, 109 Wn.2d 613, 621, 746 P.2d 1208 (1987). Because the trial court stated only that it was setting a $5,000 limit on fees, we are unclear whether or to what extent the court considered the factors in RPC 1.5. We therefore remand for a determination of attorney fees in this case, consistent with the factors set out in RPC 1.5.

█ It is not evident from RCW 36.27.020 whether fees for a special prosecutor on appeal are authorized. In this case, the disability of the prosecutor has not been cured. We find that an award of reasonable fees on appeal under RAP 18.1 for services performed is justified in such an instance. This is particularly true where the prosecutor dragged the District Court along to appellate court.

## VIII

### Intervention

Brockett argues that the trial court's denial of his motions to intervene under either CR 24(a)(2) (intervention as of right) or CR 24(b)(2) (permissive intervention) constituted an error of law or abuse of discretion respectively.

██ A denial of intervention of right is reversed only if an error of law has occurred. 7C Charles A. Wright et al., *Federal Practice* §§ 1902, 1923 (2d ed. 1986). Error of law has been defined by this court to be "an 'error in applying the law to the facts as pleaded and established.'" *In re Estate of Jones*, 116 Wash. 424, 426, 199 P. 734 (1921) (quoting *Morgan v. Williams*, 77 Wash. 343, 345, 137 P. 476 (1914)). In determining whether Brockett satisfies the conditions for intervention as of right, the court must "look to the

---

PROVIDED, That in counties wherein there is no person qualified for the position of prosecuting attorney, or wherein no qualified person will consent to perform the duties of that office, the judge of the superior court shall appoint some suitable person, a duly admitted and practicing attorney at law and resident of the state to perform the duties of prosecuting attorney for such county, and he [or she] shall receive such reasonable compensation for his [or her] services as shall be fixed and ordered by the court, to be paid by the county for which the services are performed.

pleadings, accepting the well pleaded allegations therein as true." *American Discount Corp. v. Saratoga W., Inc.*, 81 Wn.2d 34, 36, 499 P.2d 869 (1972).

CR 24(a) reads:

> Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he [or she] is so situated that the disposition of the action may as a practical matter impair or impede his [or her] ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

This rule thus imposes four requirements that must be satisfied before intervention must be granted: (1) timely application for intervention; (2) an applicant claims an interest which is the subject of the action; (3) the applicant is so situated that the disposition will impair or impede the applicant's ability to protect the interest; and (4) the applicant's interest is not adequately represented by the existing parties.

All four of these requirements must be met for reversal to be justified. There is some debate over whether Brockett's request for intervention was timely; however, the other factors are dispositive. While the meaning of "interest" is to be broadly interpreted using flexibility and case-by-case analysis, "[t]he interest which the intervenor seeks to protect must be one recognized by law" and " 'be of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment' ". *In re J.H.*, 117 Wn.2d 460, 468, 815 P.2d 1380 (1991); *State v. Roff*, 178 Wash. 311, 314, 34 P.2d 899 (1934) (quoting *State ex rel. Williams v. Superior Court*, 91 Wash. 40, 157 P. 28 (1916)). Brockett claims an interest based on his duties under RCW 36.27.020 to advise county officers and to reform and improve the administration of justice. However, our court rules recognize that the proper method of intervention for government officials interested in such a case is permissive intervention. *See* CR 24(b)(2). Most importantly, Westerman and the public defender's office very

adequately contested the order. As for the other issues, Brockett was already involved as a party.

▮ Next, we reverse a trial court's denial of permissive intervention under CR 24(b)(2) if the denial constitutes an abuse of discretion. *Ford v. Logan*, 79 Wn.2d 147, 150, 483 P.2d 1247 (1971). " ' "An abuse of discretion exists only when no reasonable person would take the position adopted by the trial court." ' " *J.H.*, at 472 (quoting *Board of Regents v. Seattle*, 108 Wn.2d 545, 557, 741 P.2d 11 (1987) (quoting *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 584, 599 P.2d 1289 (1979))).

CR 24(b)(2) itself reads:

> Upon timely application, anyone may be permitted to intervene in an action:
>
> . . . .
>
> (2) When an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies . . . upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirements, or agreement issued or made pursuant to the statute or executive order [as a claim or defense], the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

While CR 24(b)(2) permits a court to allow a government official such as a prosecutor to intervene, it does not require a court to do so; this decision is entirely with the court's discretion not to grant intervention. While we agree that an interested government agency generally should be allowed to participate if the case will affect the agency, we do not find that denial in this case constituted an abuse of discretion.

### Conclusion

We conclude that the general order does not violate article 1, section 20 of the Washington Constitution because the right to bail attaches at the time of the preliminary appearance. Nor does the order violate substantive due process, equal protection, or SCC 1.32.050.

We further conclude that the appointment of a special prosecutor was justified in this case. When appointed, the special prosecutor should be paid at public expense from the prosecutor's budget, including fees for any necessary appeals. We reverse for a determination of fees based on the factors enumerated in RPC 1.5.

Lastly, we conclude that it was neither an error of law nor an abuse of discretion for the trial court to reject Brockett's motion to intervene as of right or by permission.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, and JOHNSON, JJ., concur.

Reconsideration denied January 5, 1995.