# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | No. 70249-1-I |
| KARLA MAIA-HANSON, | DIVISION ONE |
| Appellant, | UNPUBLISHED OPINION |
| and | |
| BRADLEY HANSON, | |
| Respondent. | FILED: June 30, 2014 |

TRICKEY, J. — This appeal arises from a dissolution action between Karla Maia-Hanson and Bradley Hanson.[1] Karla seeks review of four posttrial orders, which include and pertain to the trial court's order holding Karla in contempt. But because Karla is no longer in contempt of court, the issues she presents as to two orders on appeal are moot. The remaining orders from which Karla seeks review were not timely appealed. Accordingly, we dismiss this appeal.

## FACTS

Bradley and Karla were married in 1999 and have two sons, A.H. and P.H.[2] On October 30, 2009, Karla filed a petition to dissolve the marriage.[3] On November 19, 2009, the parties agreed to a temporary parenting plan.[4]

Throughout the dissolution action, Karla instigated several unsubstantiated allegations of domestic abuse against Bradley.[5] On June 18, 2010, Child Protective Services (CPS) received a report alleging that Bradley had

---

[1] For clarity, this opinion refers to both parties by their first names. No disrespect is intended.
[2] Clerk's Papers (CP) at 1-2.
[3] CP at 1.
[4] CP at 6.
[5] See CP at 875-86, 949, 951.

abused his sons by kneeing, hitting, and squeezing them.[6] CPS later concluded that the information did not warrant an investigation.[7] On July 6, 2010, CPS received a report from a psychologist who met with Karla and one of her sons.[8] The son claimed that Bradley had sexually abused him.[9] The police and CPS once again concluded that the allegations were unfounded.[10]

On August 3, 2010, Dr. Jennifer Wheeler, the court-appointed parenting evaluator, issued an addendum to a parenting evaluation report she had previously issued on June 16, 2010.[11] Dr. Wheeler determined that Karla's strong belief that Bradley was abusive would result in psychological harm to A.H. and P.H.[12] Dr. Wheeler expressed concern that Karla would raise new allegations of abuse by Bradley to CPS or a mandated reporter, which would disrupt Bradley's residential contact with his sons and expose them to further psychological harm.[13]

August 2010 Order

Bradley moved to modify the parenting plan by adopting Dr. Wheeler's recommendations.[14] On August 19, 2010, a court commissioner entered an order denying the motion, but ordered, "If either parent has a concern that the other parent is abusing the boys, it shall be reported only to the case manager

---

[6] CP at 949.
[7] CP at 949.
[8] CP at 949.
[9] See CP at 949.
[10] CP at 949, 951.
[11] CP at 948.
[12] CP at 949.
[13] CP at 949.
[14] CP at 1065.

who shall determine if it rises to the level that should be reported to CPS."[15] The commissioner appointed a case manager "for the purpose of addressing the urgent concern identified & argued by the father of CPS reports."[16]

## May 2011 Oral Rulings

On May 31, 2011, following trial, the trial court made an oral ruling regarding the parenting plan.[17] The trial court rejected Karla's request for RCW 26.09.191 limitations on the parenting plan after finding that no evidence supported her allegations of abuse by Bradley.[18] The court did not find Karla's allegations credible.[19]

The trial court also reaffirmed its appointment of the case manager for the narrow purpose of "deal[ing] with referrals to law enforcement or CPS."[20] The court directed "that any referral to CPS or a law enforcement, whether made by the mother, the therapists or by teachers, go through the case manager."[21] The case manager was charged with determining "whether or not there's a basis to make a report at all to CPS or law enforcement."[22]

## Order Appointing a Case Manager

On June 24, 2011, the trial court entered several written orders, including a final parenting plan, an order appointing a parenting communications coach, a

---

[15] CP at 1066.
[16] CP at 1066.
[17] CP at 874-940.
[18] See CP at 875-89.
[19] See CP at 880-82.
[20] CP at 896.
[21] CP at 896-97.
[22] CP at 897.

decree of dissolution, and findings of facts and conclusions of law.[23] The trial court also filed an order appointing a case manager, "entered pursuant to the [f]inal [p]arenting [p]lan."[24] The court appointed a case manager "to avoid false allegations being reported to CPS or law enforcement and the children being interviewed unnecessarily by the above agencies."[25]

In the order appointing a case manager, the trial court found that

> [i]f the mother should become aware of information related to new allegations of abuse by the father, she should immediately report this information to the Case Manager. The Case Manager shall investigate and, if the Case Manager determines that there is a basis to make a report to CPS or to law enforcement, the Case Manager shall make the report. The mother is not permitted to make independent referrals to CPS or law enforcement, either directly or through mandated reporters, independent of the parenting coach and Case Manager.[26]

The order appointed the case manager "for at least six months," stating that the case manager "may remain involved for up to two years following the implementation of the [f]inal [p]arenting [p]lan."[27]

Contempt Order

On September 28, 2011, Bradley filed a motion for an order to show cause why an order should not be entered finding Karla in contempt.[28] This motion was predicated on an incident that occurred on June 8, 2011.[29] According to Bradley's declaration in support of his motion, while A.H. and Karla were visiting

---

[23] CP 14, 43, 49, 1067
[24] CP at 36, 1067.
[25] CP at 38-39.
[26] CP at 37.
[27] CP at 37.
[28] CP at 1085.
[29] CP at 959, 1106.

4

the school nurse together, A.H. reported to the nurse that Bradley had shoved him.[30] The school counselor contacted CPS to report the alleged abuse.[31] Karla did not contact the case manager.[32] CPS later determined that the allegation was unfounded.[33]

On November 4, 2011, the trial court entered a contempt order holding Karla in contempt of court.[34] The trial court found that Karla "intentionally failed to comply with" the August 2010 order and the court's May 2011 oral ruling, which prohibited Karla from contacting CPS or a mandatory reporter without first contacting the case manager.[35] The trial court also found that Karla "knowingly, intentionally, and willfully" violated the trial court's rulings.[36]

The contempt order contained a purge clause, whereby Karla could purge her contempt by complying with the order appointing a case manager and the parenting communication coach order, and by "first report[ing] any allegation she is aware of to the case manager before she takes the children to a mandatory report [sic]."[37]

The contempt order additionally included sanctions for committing contempt of court. The court ordered Karla to pay Bradley's attorney fees in the

---

[30] CP at 1107-09.
[31] CP at 959, 1106.
[32] CP at 1110.
[33] CP at 959, 1110.
[34] CP at 116.
[35] CP at 117; see also CP at 37, 897.
[36] CP at 118.
[37] CP at 119.

5

amount of $3,000.[38]  The court also directed Karla to comply with "this court's order."[39]

Review Hearing Order

A review hearing took place on May 31, 2012 to determine whether Karla had purged her contempt.[40]  This hearing was not recorded or reported.  In his response declaration submitted to the trial court, Bradley claimed that there was a pending CPS referral—the sixth allegation of abuse by Bradley, filed on September 26, 2011—and he had not yet received a letter confirming it was unfounded.[41]

The trial court did not enter a written order on the May 2012 review hearing until March 29, 2013, following a presentation hearing that day.[42]  At the presentation hearing, the court granted Karla's motion to purge the contempt order.[43]  The March 2013 review hearing order stated, in relevant part:

> **As of the review hearing on 05.31.2012**: . . . The Court finds that Petitioner is working towards compliance with the Court orders, but due to the findings above and the yet outstanding referral to Child Protection Services, it is appropriate that the Court give Petitioner more time to purge the contempt order.  Petitioner may ask for another review hearing in one year to purge her contempt.  **As of 03.29.2013**; the court finds the contempt is now purged.[44]

---

[38] CP at 116.
[39] CP at 123.
[40] See CP at 850.
[41] CP at 1442-43.
[42] CP at 850.
[43] Verbatim Report of Proceedings (VRP) (March 29, 2013) at 3.
[44] CP at 854 (emphasis added).

Order on Reconsideration

The trial court denied Karla's motion for reconsideration in an order entered on April 22, 2013.[45] Among other things, the court denied Karla's request to file her counsel's notes from the May 2012 review hearing as a narrative report.[46] The court also awarded attorney fees to Bradley in the amount of $951.50.

## ANALYSIS

On appeal, Karla seeks review of the review hearing order, the order on reconsideration, the contempt order, and the order appointing a case manager.[47] The issues she raises as to the review hearing order and the order on reconsideration are moot. Furthermore, Karla failed to timely appeal the contempt order and order appointing a case manager. Accordingly, we dismiss this appeal.

Review Hearing Order and Order on Reconsideration

"Only an aggrieved party may seek review by the appellate court." RAP 3.1. "A case is moot if a court can no longer provide effective relief." Orwick v. City of Seattle, 103 Wn.2d 249, 253, 692 P.2d 793 (1984). This court may nevertheless review a moot case if it presents an issue of continuing and substantial public interest. In re Marriage of Horner, 151 Wn.2d 884, 891, 93 P.3d 124 (2004) (citing Westerman v. Cary, 125 Wn.2d 277, 286, 892 P.2d 1067 (1994)).

---

[45] CP at 858.
[46] CP at 858-59.
[47] CP 860.

Here, the review hearing order found that as of May 2012, Karla had not purged her contempt. However, it also found that as of March 2013, when the order was entered, Karla had purged her contempt. In this appeal, Karla's challenges to this order pertain to the former finding—that as of May 2012, Karla had not yet purged the contempt. Specifically, she claims that this finding is not supported by substantial evidence because it was predicated on an allegation of abuse that predated the original contempt finding. With regard to the order on reconsideration, Karla contends that the court erred by rejecting her counsel's notes from the May 2012 review hearing as a narrative report. These contentions are moot because as of March 2013, Karla is no longer in contempt of court. See In re Interest of M.B., 101 Wn. App. 425, 432, 3 P.3d 780 (2000) (issues raised on appeal were moot because at the time of appeal, the juveniles had either purged or served the imposed detention term). Therefore, we cannot provide effective relief.

Karla asserts that the contempt order and the "underlying illegal restraint"[48] are not moot and she was aggrieved because the contempt order ordered her to pay attorney fees in the amount of $3,000 and because the order on reconsideration ordered her to pay attorney fees in the amount of $951.50. But we do not dismiss this case on the basis that the contempt order raises moot issues. Rather, as will be discussed, this court will not review the contempt order because it was not timely appealed. In addition, the $951.50 attorney fees award

---

[48] Br. of Appellant's Reply at 12.

has no relation to her contention raised on appeal regarding the court's rejection of counsel's narrative report.[49]

Nevertheless, in her reply brief, Karla cites to several cases in which a Washington court addressed a moot case because it presented an issue of continuing and substantial public interest. However, she does not explain how the review hearing order and order on reconsideration meet this exception.

The review hearing order purged Karla of her contempt and she is no longer aggrieved. Because Karla fails to demonstrate that this court can grant effective relief or that the issues raised on appeal qualify for review under the criteria for review of moot issues, we dismiss this appeal as moot.

<u>Contempt Order and Order Appointing a Case Manager</u>

A party is allowed 30 days from the entry of judgment to file a notice of appeal. RAP 5.2(a). Karla assigns errors to the contempt order and the order appointing a case manager.[50] She did not expressly designate these orders in the notice of appeal. Rather, the notice of appeal states that Karla seeks review of "all other orders upon which [the review hearing order and the order on reconsideration] depend or prejudicially affect."[51] The contempt order was entered on November 4, 2011, and the order appointing a case manager was

---

[49] See CP at 859.
[50] Specifically, Karla argues that these orders—which prohibited Karla from reporting allegations of abuse to CPS and law enforcement without first contacting the case manager—amount to an unconstitutional prior restraint on her right to free speech and right to petition the government for a redress of grievances. Karla also asserts several assignments of error regarding the contempt order. But because the contempt order and order appointing a case manager were not timely appealed, we do not address the merits of these contentions.
[51] CP at 860.

entered on June 24, 2011. Karla did not appeal these orders within 30 days following entry of judgment.

However, under RAP 2.4(b), an appellate court "will review a trial court order or ruling not designated in the notice, including an appealable order, if (1) the order or ruling prejudicially affects the decision designated in the notice, and (2) the order is entered, or the ruling is made, before the appellate court accepts review." Because we dismiss the issues raised in the review hearing order and order on reconsideration as moot, we need not determine whether the contempt order and order appointing a case manager prejudicially affected those decisions.[52]

We decline to review the validity of the contempt order and order appointing a case manager. Karla failed to file a notice of appeal within 30 days of entry of these decisions and therefore waived her right to challenge their terms.

## Attorney Fees on Appeal

Bradley requests attorney fees on appeal pursuant to RAP 18.9(a) or, in the alternative, pursuant to RCW 26.09.160 and RCW 7.21.030.

We decline to order sanctions pursuant RAP 18.9(a). However, we grant Bradley's request for attorney fees on appeal under RCW 26.09.160 and RCW

---

[52] We also note that under RAP 18.8(a), an appellate court may "enlarge . . . the time within which an act must be done in a particular case in order to serve the ends of justice." Karla makes no request to excuse her failure to timely appeal under this rule. Nevertheless, such request would fail because the circumstances are not "extraordinary," as required for an extension of time to file a notice of appeal. RAP 18.8(b).

7.21.030, subject to compliance with RAP 18.1.  See In re Marriage of Rideout, 150 Wn.2d 337, 359, 77 P.3d 1174 (2003) ("[A] party is entitled to an award of attorney fees on appeal to the extent the fees relate to the issue of contempt.").

Dismissed.

Trickey, J

WE CONCUR:

Leach, J.

Cox, J.