[No. 55019-5-I.   Division One.   September 6, 2005.]

TIM PAXTON ET AL., *Appellants*, v. THE CITY OF BELLINGHAM ET AL., *Respondents*.

*Tim Paxton, Sharon Crozier*, and *Larry Williams*, pro se.

*Joan Hoisington, City Attorney*, and *Peter M. Ruffato, Assistant*; and *David S. McEachran, Prosecuting Attorney*, and *Randall J. Watts, Deputy*, for respondents.

¶1 SCHINDLER, J. — Tim Paxton, Sharon Crozier, and Larry Williams (collectively Paxton) appeal the trial court's decision denying their request for a writ of mandamus compelling the election officials to place the "Ban Power Boats Initiative" (Initiative) on the November 2004 city of Bellingham election ballot.[1] Paxton also argues the trial court abused its discretion in allowing Lake Whatcom Stewardship Association (LWSA) and Robin Williams' request to intervene and denying additional time for rebuttal argument at the show cause hearing. We conclude the City did not have a legal duty to place the Initiative on the election ballot because there were insufficient valid signatures under state law, RCW 35.21.005(8), and the Bellingham City Charter. We also conclude the trial court did not abuse its discretion in granting the motion to intervene or limiting time for argument. We affirm.

## FACTS

¶2 Bellingham is located in Whatcom County and is a first-class city incorporated under Title 35 RCW.[2] In August 2003, Paxton organized a signature drive for the Initiative. The Initiative would "limit, restrict, and eliminate certain gas-driven motor boats"[3] from the part of Lake Whatcom that is located within the city of Bellingham's boundaries.[4] That same month, Paxton sought advice from the Whatcom County Auditor (Auditor), Shirley Forslof, about the proce-

---

[1] Clerk's Papers (CP) at 6, 180.

[2] *See* RCW 35.01.010; 35.02.010.

[3] CP at 107.

[4] There was also a Whatcom County Ban Power Boats Initiative. But when the proponents failed to collect a sufficient number of signatures to qualify for the County, they focused all their efforts on obtaining signatures for the City Initiative.

dures to follow to submit the Initiative for the City's November 2004 election ballot. According to Paxton, the Auditor said there was no time limit for obtaining signatures before filing the Initiative and if there were duplicate signatures, the first signature would be counted and the second stricken.

¶3 On July 26, 2004, nearly a year later, Paxton filed the signatures the proponents had obtained for the Initiative with the Finance Director of the city of Bellingham (Finance Director), Therese Holm. The Finance Director forwarded the signature pages to the Auditor to determine whether there were enough valid signatures to place the Initiative on the ballot.[5] Under the Bellingham City Charter (City Charter), the number of valid signatures must total at least 20 percent of the number of votes cast in the most recent mayoral election.[6]

¶4 On August 6, 2004, the City Clerk told Paxton there were an insufficient number of signatures but that under the City Charter the Initiative proponents had another 20 days, or until August 25, 2004, to collect the additional 507 signatures needed to place the Initiative on the November ballot. On August 17, 18, and 19, proponents of the Initiative submitted additional signatures that were forwarded to the Auditor. On August 23, the Finance Director received a letter from the Auditor stating that the "petition was sufficient."[7] That same evening, the Bellingham City Council (Council) voted unanimously to place the Initiative on the City's November 2004 ballot. Based on the Council decision, the Assistant City Attorney asked the Auditor to place the Initiative on the November ballot.

¶5 On September 8, 2004, the Auditor informed the City Attorney and the Finance Director that the signatures for the Initiative were mistakenly reviewed under the provi-

---

[5] The city of Bellingham does not have an elections office and relies on the Auditor to verify signatures and determine the validity and sufficiency of initiative petitions.

[6] City of Bellingham Charter art. 10, § 10.02.

[7] CP at 183.

sions of Title 29A RCW, "Elections," instead of Title 35 RCW, "Cities and Towns." The City Attorney requested the Auditor to review and verify the Initiative signatures under the statutory provisions in Title 35 RCW. Unlike chapter 29A.72 RCW, chapter 35.21 RCW requires that signatures collected more than six months before the Initiative petition is filed with the City and duplicate signatures must be stricken.[8] On September 10, 2004, the Auditor informed the City Attorney that at least 460 signatures had to be stricken because these signatures were collected more than six months before the Initiative was filed. Application of the criteria in chapter 35.21 RCW resulted in an insufficient number of valid signatures as required by the City Charter and the Initiative was not placed on the November 2004 election ballot.

¶6 On September 24, 2004, Paxton filed a Petition for an Alternative Writ of Mandamus to compel the Auditor and the Finance Director to place the Ban Power Boats Initiative on the November ballot.[9] The trial court granted the request of LWSA, a nonprofit Washington corporation organized to represent the interests of Lake Whatcom homeowners and boaters, and Robin Williams, a lake-front property owner on Lake Whatcom, to intervene. After a show cause hearing, the trial court denied the writ of mandamus and entered findings of fact and conclusions of law. Paxton appeals.

## ANALYSIS

¶7 The trial court ruled that the provisions of chapter 35.21 RCW governed the determination of the validity of the signatures submitted for the Initiative and under the City Charter there were not enough valid signatures to place the Initiative on the November ballot. The trial court ruled that the City did not have a legal duty to place the

---

[8] *See* RCW 29A.72.230; 35.21.005(8), (7).

[9] Paxton also filed a motion for an emergency stay to prevent printing the November 2004 ballots. The trial court denied Paxton's request for a stay.

Initiative on the ballot and denied Paxton's request for a writ of mandamus.

■ ¶8 Preliminarily, the City contends Paxton's appeal is moot because the November 2004 election has passed. We may review a case, even if moot, if it involves a substantial public interest. *Philadelphia II v. Gregoire*, 128 Wn.2d 707, 712, 911 P.2d 389 (1996). In determining whether an issue involves substantial public interest, we consider three factors: (1) whether the issue is of a public or private nature, (2) whether an authoritative determination is desirable to provide future guidance to public officers, and (3) whether the issue is likely to recur. *Id.*[10] This case involves an issue of substantial public interest and warrants review. The City concedes that the issue is of a public nature. We conclude it is desirable to determine whether chapter 35.21 RCW applies to the City Initiative process and provide future guidance to City officials in reviewing initiatives. We also conclude the issue is likely to recur.

■ ■ ¶9 Mandamus is an extraordinary remedy.[11] *Walker v. Munro*, 124 Wn.2d 402, 407, 879 P.2d 920 (1994). Mandamus is an appropriate means to compel a state official "to comply with law when the claim is clear and there is a duty to act." *In re Pers. Restraint of Dyer*, 143 Wn.2d 384, 398, 20 P.3d 907 (2001). A party seeking a writ of mandamus must satisfy three requirements: (1) the party subject to the writ must be under a clear duty to act; (2) the petitioner must be "beneficially interested"; and (3) the petitioner must not have a "plain, speedy and adequate remedy in the ordinary course of law." RCW 7.16.170; *accord Eugster v. City of Spokane*, 118 Wn. App. 383, 402,

---

[10] (citing *Westerman v. Cary*, 125 Wn.2d 277, 286-87, 892 P.2d 1067 (1994); *Hart v. Dep't of Soc. & Health Servs.*, 111 Wn.2d 445, 448, 759 P.2d 1206 (1988)).

[11] RCW 7.16.160 provides that a writ of mandamus

may be issued by any court, except a district or municipal court, to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by such inferior tribunal, corporation, board or person.

76 P.3d 741 (2003), *review denied*, 151 Wn.2d 1027 (2004). Whether there is a clear duty to act is a question of law reviewed de novo. *River Park Square, L.L.C. v. Miggins*, 143 Wn.2d 68, 76, 17 P.3d 1178 (2001).

¶10 The City's duty to act turns on the application and requirements of state law. As a first-class city, Bellingham is organized and incorporated under Title 35 RCW, and the City adopted a charter.[12] Title 35 RCW states that a city charter "may provide for direct legislation by the people through the initiative and referendum upon any matter within the scope of the powers, functions, or duties of the city." RCW 35.22.200. The City Charter addresses initiative petitions and designates the number of signatures necessary for an initiative to be placed on the ballot.[13] But the City Charter does not address the time period for collecting signatures, how to treat duplicate signatures, or the form of the initiative petition. According to section 2.04 of the City Charter, these procedures are governed by state

---

[12] *See* RCW 35.01.010; 35.02.010; 35.22.010, .020, .030, .200, .245.

[13] The people of Bellingham, in addition to the method of legislation, otherwise run in; it part of quote herein provided, shall have power to direct legislation by initiative and referendum.

  . . . .

An initiative may be exercised on petition of a number of qualified voters equal to not less than twenty (20) percent of the total number of votes cast for the office of Mayor at the last preceding municipal general election, proposing the enactment, as an ordinance, of a bill, the full text of which shall be included in the petition.

Every initiative petition shall be filed with the Finance Director, who shall verify the sufficiency of the signatures to the petition, and transmit it, together with his report thereon, to the City Council at a regular meeting not more than twenty (20) days after the filing of the petition, and such transmission shall be the introduction of the initiative bill in the City Council. If the Finance Director shall find any petition to be insufficient in signatures, he shall notify the principal petitioners, and an additional twenty (20) days shall be allowed them in which to obtain the required percentage.

  . . . .

If the City Council shall have rejected any initiative bill, or shall, within thirty (30) days after receipt thereof, have failed to take final action thereon, or shall have passed a different bill dealing with the same subject, the said rejected initiative bill and such different bill dealing with the same subject, if any has been passed, shall be submitted by the Finance Director to the qualified electors for approval or rejection at the next municipal general election: Provided; That the City Council may, in its discretion, provide for a special election at which the vote shall be taken.

City of Bellingham Charter art. X, §§ 10.01, .02, .05.

law: "[a]ll municipal elections shall be governed by the procedure for elections as prescribed in the laws of the State of Washington." The provisions of Title 35 RCW governs "Cities and Towns."[14] RCW 35.21.005(8) addresses the rules concerning the sufficiency of initiative petitions and the time period for collecting valid initiative petition signatures:

> **Sufficiency of petitions.** Wherever in this title petitions are required to be signed and filed, the following rules shall govern the sufficiency thereof:
>
> . . . .
>
> (8) Signatures followed by a date of signing which is more than six months prior to the date of filing of the petition shall be stricken.

It is undisputed that a number of the signatures submitted by Paxton did not meet the six-month cutoff in RCW 35-.21.005(8) and were stricken. But Paxton argues that chapter 29A.72 RCW, and not chapter 35.21 RCW, governs the requirements for the City's initiative petitions. Under RCW 29A.72.230, there is no time limit for obtaining valid signatures before an initiative is filed and duplicate signatures are not stricken.[15] Under RCW 35.21.005 there is a

---

[14] *See generally* Title 35 RCW.

[15] RCW 29A.72.230 provides that:

Upon the filing of an initiative or referendum petition, the secretary of state shall proceed to verify and canvass the names of the legal voters on the petition. The verification and canvass of signatures on the petition may be observed by persons representing the advocates and opponents of the proposed measure so long as they make no record of the names, addresses, or other information on the petitions or related records during the verification process except upon the order of the superior court of Thurston county. The secretary of state may limit the number of observers to not less than two on each side, if in his or her opinion, a greater number would cause undue delay or disruption of the verification process. Any such limitation shall apply equally to both sides. The secretary of state may use any statistical sampling techniques for this verification and canvass which have been adopted by rule as provided by chapter 34.05 RCW. No petition will be rejected on the basis of any statistical method employed, and no petition will be accepted on the basis of any statistical method employed if such method indicates that the petition contains fewer than the requisite number of signatures of legal voters. If the secretary of state finds the same name signed to more than one petition, he or she shall reject all but the first such valid signature. For an initiative to the legislature,

six-month time limitation for obtaining valid signatures before the initiative is filed and duplicate signatures are stricken.

¶11 Statutory interpretation is a question of law reviewed de novo. *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 593, 90 P.3d 659 (2004). We interpret statutes to effectuate legislative intent. *Cherry v. Mun. of Metro. Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991). In determining legislative intent, we first look to the language of the statute. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). "Where statutory language is plain and unambiguous, courts will not construe the statute but will glean the legislative intent from the words of the statute itself . . . ." *Agrilink Foods, Inc. v. Dep't of Revenue*, 153 Wn.2d 392, 396, 103 P.3d 1226 (2005).

¶12 Chapter 29A.72 RCW governs the "State Initiative and Referendum" procedures. The provisions and requirements in chapter 29A.72 RCW are replete with references to the "secretary of state" and the "legislature." *See, e.g.*, RCW 29A.72.010, .030, .160. It is clear from the language used throughout chapter 29A.72 RCW that its provisions unambiguously apply only to state initiatives and not to city initiatives.

¶13 Because the Initiative failed to comply with the requirements of state law, chapter 35.21 RCW, and the City Charter, the City did not have a clear duty to place the Initiative on the November 2004 election ballot. *See State ex rel. Uhlman v. Melton*, 66 Wn.2d 157, 161, 401 P.2d 631 (1965) (recognizing that strict compliance with "statutory requirements is mandatory and jurisdictional, and that failure to so comply is fatal to" petitions for referendum).

■■ ¶14 Alternatively, Paxton argues the doctrine of equitable estoppel applies and prevents the City from

---

the secretary of state shall transmit a certified copy of the proposed measure to the legislature at the opening of its session and, as soon as the signatures on the petition have been verified and canvassed, the secretary of state shall send to the legislature a certificate of the facts relating to the filing, verification, and canvass of the petition.

refusing to place the Initiative on the ballot. Equitable estoppel requires "(1) an admission, statement or act inconsistent with a claim later asserted; (2) reasonable reliance on that admission, statement, or act by the other party; and (3) injury to the relying party if the court permits the first party to contradict or repudiate the admission, statement or act." *Dep't of Ecology v. Theodoratus*, 135 Wn.2d 582, 599, 957 P.2d 1241 (1998). It is a well established principle that "where the representations allegedly relied upon are matters of law, rather than fact, equitable estoppel will not be applied." *Theodoratus*, 135 Wn.2d at 599-600 (citing *Chem. Bank v. Wash. Pub. Power Supply Sys.*, 102 Wn.2d 874, 905, 691 P.2d 524 (1984); *Concerned Land Owners of Union Hill v. King County*, 64 Wn. App. 768, 778, 827 P.2d 1017 (1992)). Here, the County Auditor relied on the wrong statute and provided inaccurate information to the Initiative proponents concerning the procedures for collecting signatures. The Auditor's misrepresentations about the time period to collect signatures and the effect of duplicate signatures were incorrect statements of the law. Under these circumstances, we must conclude the doctrine of equitable estoppel cannot apply.[16]

¶15 Paxton also contends that the trial court abused its discretion in granting LWSA and Williams' motion to intervene under CR 24(b) and by not allowing additional time for rebuttal argument at the show cause hearing. A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. *Hizey v. Carpenter*, 119 Wn.2d 251, 268, 830 P.2d 646 (1992).

---

[16] Other jurisdictions have specifically declined to apply equitable estoppel in mandamus actions against election officials exercising governmental functions. *See State ex rel. Barletta v. Fersch*, 99 Ohio St. 3d 295, 297-98, 2003-Ohio-3629, 791 N.E.2d 452 (declining to apply estoppel against a city auditor, who refused to certify the sufficiency and validity of a referendum petition); *State ex rel. Ditmars v. McSweeney*, 94 Ohio St. 3d 472, 472-73, 476, 2002-Ohio-997, 764 N.E.2d 971 (declining to apply estoppel against a city clerk, who refused to certify an initiative petition for placement on the election ballot); *Leach v. Fischer*, 669 S.W.2d 844, 845, 847 (Tex. Ct. App. 1984) (declining to apply estoppel against the secretary for the democratic party executive committee, who refused to place an applicant's name on the primary ballot).

¶16 A court may grant intervention under CR 24(b)(2) if "an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." In September 2004, LWSA and Williams formally challenged the validity of the Initiative and demanded an independent review. The trial court decided LWSA and Williams had an interest in the outcome of the writ and their challenge to the Initiative involved the same questions of law. We conclude the trial court did not abuse its discretion in granting LWSA and Williams' request to intervene. The record also does not show the trial court's decision to not allow additional time for rebuttal argument at the hearing was an abuse of discretion. A trial court has considerable latitude in deciding the amount of time allowed for argument. *State v. Cecotti*, 31 Wn. App. 179, 183, 639 P.2d 243 (1982).

## CONCLUSION

¶17 We affirm the trial court's order denying the writ of mandamus and conclude the trial court did not abuse its discretion in granting the motion to intervene or limiting the time for argument.[17]

BAKER and ELLINGTON, JJ., concur.

---

[17] Paxton raises several other issues for the first time on appeal: (1) that applying the requirements of RCW 35.21.005 would violate ex post facto law; (2) that the trial court erred in admitting unlawfully obtained documents; (3) that the City and county attorneys had a conflict of interest; (4) that the challenge to sufficiency of the Initiative petition was untimely under RCW 29A.72.240; (5) that she was entitled to an official recount; and (6) that Title 29A RCW and RCW 35A.11.090 govern the number of petition signatures required for the Initiative petition. We decline to address these issues that are raised for the first time on appeal. *Herberg v. Swartz*, 89 Wn.2d 916, 925, 578 P.2d 17 (1978); *Cotton v. Kronenberg*, 111 Wn. App. 258, 273, 44 P.3d 878 (2002); *Ryder v. Port of Seattle*, 50 Wn. App. 144, 150, 748 P.2d 243 (1987).