# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| END THE PRISON INDUSTRIAL COMPLEX ("EPIC"), | ) ) ) | DIVISION ONE |
| Appellant, | ) ) ) | No. 77212-1-I |
| YOUTH UNDOING INSTITUTIONAL RACISM, EUROPEAN DISSENT, BLOCK THE BUNKER, COMMUNITY 2 COMMUNITY, ONE AMERICA, AFRICAN AMERICAN LEADERSHIP FORUM, REV. ANDREW CONLEY-HOLCOM, ARTIFACTS, ARTS CORPS, AUTONOMOUS ACTIONS AGAINST PRISONS, REV. BETH CHRONISTER, BUDDHIST PEACE FELLOWSHIP, COALITION OF ANTI-RACIST WHITES, SEATTLE CISPES, COMMITTEE ON OPPRESSION AND RACISM IN EDUCATION, COMMUNITY PASSAGEWAYS, EVANS PEOPLE OF COLOR, HIDMO, INCARCERATED MOTHERS ADVOCACY PROJECT, LATINO/A LAW STUDENTS ASSOCIATION, LATINO ADVOCACY, MIGRANT JUSTICE GROUP, NO NEW JIM CROW, NWDC RESISTANCE, PARTNERSHIP FOR COMMUNITY & DIVERSITY, POST-PRISON EDUCATION PROGRAM, RABBI DAVID BASIOR, RACE ACTION COMMITTEE AT EVANS, RB RESTORATIVE JUSTICE, REAL | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2018 MAY 29 AM 9:53

No. 77212-1-I/2

CHANGE, RED NOSES, REV. RICK )
DERKSEN, PROFESSOR ROSE )
ERNST, RACE & CLIMATE JUSTICE, )
RISING TIDE SEATTLE, SEA SOL, )
SEATTLE MENNONITE CHURCH, )
STOP VEOLIA SEATTLE, SURGE, )
TENANTS UNION OF WASHINGTON )
STATE, TRANSIT RIDERS UNION, )
UNIVERSITY UNITARIAN CHURCH, )
WA-BLOC, YOUTH SPEAKS )
SEATTLE, )
)
          Petitioners/Plaintiffs, )
)
          v. )
)
KING COUNTY, BALFOUR BEATTY )
CONSTRUCTION, D/B/A HOWARD )
S. WRIGHT AND PATRICK )
DONNELLY, )
)
          Respondents, )
)
CITY OF SEATTLE, )
)
          Defendant.[†] )
)     FILED: May 29, 2018
)
)

DWYER, J. — End the Prison Industrial Complex (EPIC) appeals from an order of the King County Superior Court dismissing its Land Use Petition Act (LUPA)[1] petition and its mandamus actions against King County and the City of Seattle. EPIC contends that the superior court erred by dismissing EPIC's LUPA

---

[†] The judgment entered herein did not set forth a case caption identifying all of the parties to this dispute before the superior court. Similarly, the case captions set forth in the appellant's and petitioners'/plaintiffs' superior court petition and complaint did not identify these parties, in violation of CR 10(a)(1) ("In the complaint the title of the action shall include the names of *all* the parties." (emphasis added)). Our rules provide that we utilize the caption as it was set forth in the superior court. RAP 3.4. However, given that the matter was improperly captioned in the superior court, we exercise our authority to correct the error. RAP 3.4.

[1] Ch. 36.70C RCW.

-2-

petition challenging the decisions of the Seattle Department of Construction and Inspections (SDCI) on the basis that the LUPA petition was untimely filed and by dismissing EPIC's mandamus actions on the basis that the actions did not satisfy the statutory requirements for mandamus relief.

Concluding that the superior court did not err by dismissing EPIC's claims, we affirm.

I

In August 2012, voters in King County approved a levy to fund a proposal known as the Children and Family Justice Center Project. The Project involves the demolition of an existing juvenile justice complex located in Seattle known as the Youth Services Center and the construction of a new complex to be known as the Children and Family Justice Center. The new complex is to be comprised of structures including courtrooms, office space, detention housing, a school, and a parking structure. King County was designated the lead agency for the Project and is also the owner of the property in question.

King County, in its capacity as lead agency for the Justice Center Project, initiated and completed a State Environmental Policy Act (SEPA)[2] review of the Project's environmental impact. In 2013, King County issued a Mitigated Determination of Non-Significance (MDNS), indicating that the Project would not have a probable significant adverse impact on the environment.

Thereafter, in its capacity as property owner and developer, King County requested a Master Use Permit (MUP) from SDCI to modify or waive certain

---

[2] Ch. 43.21C RCW.

building-width and setback development standards that the city code made applicable to structures categorized as a youth service centers.

On December 22, 2016, SDCI issued a notice of decision that it had approved King County's permit request. The notice of decision set forth that SDCI would issue a MUP to King County that would authorize King County to commence the demolition and construction phase of the Justice Center Project.

Two decisions set forth in SDCI's notice of decision regarding King County's MUP request are pertinent to this appeal. First, the notice of decision set forth that SDCI was waiving and modifying the City's structure-width and setback development standards regarding youth service centers in order to accommodate the Justice Center Project. Additionally, SDCI's notice of decision set forth that its approval of King County's MUP request was conditioned on both King County's acknowledgement and filing of specified management plans required by the City and King County's compliance with its MDNS, including the environmental mitigation conditions set forth therein.

As pertinent here, SDCI's notice of decision also set forth a statement that read: "Appeals of this decision must be received by the Hearing Examiner no later than **1/5/2017**." Prior to January 5, 2017, EPIC filed with the City's Hearing Examiner an administrative appeal challenging SDCI's decisions regarding the development standards for youth service centers and the SEPA conditions that SDCI had imposed. EPIC did not file a LUPA petition in the King County Superior Court challenging SDCI's decisions at this time.

-4-

King County and Balfour Beatty Construction, d/b/a Howard S. Wright and Patrick Donnelly, jointly moved to dismiss EPIC's administrative appeal. On March 1, 2017, the Hearing Examiner dismissed EPIC's appeal on the basis that the City's land use code[3] did not authorize the Examiner to resolve EPIC's administrative appeal challenging SDCI's decisions. Specifically, the Examiner concluded that, pursuant to the City's land use code, "the Department's decision modifying certain development standards for the Children and Family Justice Center project" and "the City's decision imposing SEPA conditions on the Family and Justice Center project" are "not subject to appeal to the Hearing Examiner." EPIC sought reconsideration of the Examiner's decisions, which was denied on March 28, 2017.

On April 14, 2017, 21 days after the Hearing Examiner's denial of reconsideration issued, EPIC filed a LUPA petition in the King County Superior Court challenging both SDCI's decisions and the Hearing Examiner's ruling that the Examiner did not have authority to resolve an administrative appeal from the challenged SDCI decisions. EPIC also filed a complaint alleging that King County and Balfour Beatty had violated SEPA and that mandamus relief against the City of Seattle, King County, and Balfour Beatty was warranted.

Balfour Beatty moved to dismiss EPIC's LUPA petition. King County moved to dismiss EPIC's complaint. They also joined one another's dismissal

---

[3] Ch. 23.76 SMC.

motions.[4] The superior court granted both motions and dismissed EPIC's LUPA petition and complaint with prejudice.[5]

## II

## A

EPIC contends that the superior court erred by dismissing as untimely its LUPA petition challenging SDCI's decisions. We disagree.

"We review de novo a superior court's ruling on a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to CR 12(b)(6)." Durland v. San Juan County, 175 Wn. App. 316, 320, 305 P.3d 246 (2013), aff'd, 182 Wn.2d 55, 340 P.3d 191 (2014) (citing West v. Stahley, 155 Wn. App. 691, 696, 229 P.3d 943 (2010)). "The superior court properly dismisses a claim pursuant to CR 12(b)(6) 'only if it appears beyond a reasonable doubt that no facts justifying recovery exist.'" Durland, 175 Wn. App. at 320 (quoting West, 155 Wn. App. at 696). When the facts are not at issue, we review de novo a superior court ruling that a LUPA petition was untimely. Nickum v. City of Bainbridge Island, 153 Wn. App. 366, 373-74, 223 P.3d 1172 (2009) (citing Wells v. Olsten Corp., 104 Wn. App. 135, 139, 15 P.3d 652 (2001)).

The stated purpose of LUPA is to provide "consistent, predictable, and timely judicial review." RCW 36.70C.010. Hence, "[a]bsent specific, limited

---

[4] The City of Seattle took no position on King County's and Balfour Beatty's motions.
[5] EPIC later moved for reconsideration, which the superior court denied.

exceptions,[6] LUPA is 'the exclusive means of judicial review of land use

decisions.'" Durland, 175 Wn. App. at 321 (quoting RCW 36.70C.030(1)).

> LUPA invokes the appellate jurisdiction of the superior court; accordingly, "the superior court has only the jurisdiction as conferred by law." Conom v. Snohomish County, 155 Wn.2d 154, 157, 118 P.3d 344 (2005). Pursuant to LUPA, the superior court, acting in its appellate capacity, may review only "land use decisions," as defined by the act. See RCW 36.70C.010, .030(1).

Durland, 175 Wn. App. at 321.

> LUPA defines a "land use decision," in pertinent part, as

> a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:
> (a) An application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used.

RCW 36.70C.020(2).[7]

Consequently, to ensure timely review of land use decisions, "LUPA

requires that a party file a petition for review with the superior court within 21

days of the date [that] a land use decision is issued." Vogel v. City of Richland,

161 Wn. App. 770, 776-77, 255 P.3d 805 (2011) (citing RCW 36.70C.040(3)).

> This deadline is "stringent." Asche v. Bloomquist, 132 Wn. App. 784, 795, 133 P.3d 475 (2006), review denied, 159 Wn.2d 1005 (2007). It reflects a strong public policy of finality in land use decisions. Samuel's Furniture[, Inc., v Dep't of Ecology], 147 Wn.2d [440, ]458-59 [, 54 P.3d 1194, 63 P.3d 764 (2002)]. Even illegal land use decisions will be allowed to stand if not timely

---

[6] LUPA does not apply to judicial review of "[l]and use decisions made by bodies that are not part of a local jurisdiction," "[l]and use decisions of a local jurisdiction that are subject to review by a quasi-judicial body created by state law," "applications for a writ of mandamus or prohibition," or "[c]laims provided by any law for monetary damages or compensation."
Durland, 175 Wn. App. at 321 n.2 (quoting RCW 36.70C.030(1)).
    [7] The parties do not dispute that the challenged SDCI decisions are land use decisions as set forth in RCW 36.70C.020(2).

challenged under LUPA. Habitat Watch v. Skagit County, 155 Wn.2d 397, 407, 120 P.3d 56 (2005).

Chumbley v. Snohomish County, 197 Wn. App. 346, 359, 386 P.3d 306 (2016). "Numerous opinions confirm that the 21 day LUPA deadline is absolute." Nickum, 153 Wn. App. at 382 (citing Habitat Watch, 155 Wn.2d at 406-07; Chelan County v. Nykreim, 146 Wn.2d 904, 932-33, 52 P.3d 1 (2002); Spice v. Pierce County, 149 Wn. App. 461, 467, 204 P.3d 254 (2009); Keep Watson Cutoff Rural v. Kittitas County, 145 Wn. App. 31, 37-38, 184 P.3d 1278 (2008)).

"Thus, challenges brought after the expiration of deadlines for filing local administrative appeals or after LUPA's 21-day time period for filing an appeal constitute impermissible collateral attacks." Stientjes Family Tr. v. Thurston County, 152 Wn. App. 616, 624 n.8, 217 P.3d 379 (2009) (citing Habitat Watch, 155 Wn.2d at 410-11; Nykreim, 146 Wn.2d at 933; Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 181, 4 P.3d 123 (2000)).

There is no dispute that SDCI issued the land use decisions challenged by EPIC on December 22, 2016. It is also undisputed that EPIC filed its LUPA petition challenging these decisions in the superior court on April 14, 2017.

Given these undisputed facts, the superior court determined that EPIC's LUPA petition challenging SDCI's decisions was filed well beyond LUPA's 21-day limitation period allotted for superior court review of a land use decision. The superior court accordingly ruled that EPIC's LUPA petition challenging SDCI's decisions was untimely.

There was no error. Given LUPA's "stringent" and "absolute" limitation period, Asche, 132 Wn. App. at 795, Nickum, 153 Wn. App. at 382, the superior

court did not err by ruling that EPIC's LUPA petition challenging SDCI's decisions was untimely.

B

EPIC next challenges several components underlying the superior court's dismissal ruling. None of EPIC's arguments warrant appellate relief.

1

EPIC initially contends that the superior court erred by ruling that EPIC's LUPA petition challenging SDCI's decisions was untimely because the superior court incorrectly identified SDCI as the final decision-maker responsible for the challenged SDCI decisions. The superior court erred, EPIC asserts, because the Hearing Examiner, rather than SDCI, was the final decision-maker responsible for the challenged SDCI decisions and EPIC's LUPA petition challenging SDCI's decisions was filed in the superior court within 21 days of the Examiner's final determination.

In order to determine whether the superior court properly identified the final decision-maker responsible for the challenged SDCI decisions, we must review the administrative decision upon which the superior court's timeliness ruling was predicated.

"In reviewing an administrative decision, we stand in the same position as the superior court." Biermann v. City of Spokane, 90 Wn. App. 816, 821, 960 P.2d 434 (1998) (citing Wilson v. Emp't Sec. Dep't, 87 Wn. App. 197, 201, 940 P.2d 269 (1997)). In the context of administrative review, we review the

administrative agency action, not the superior court record. J.L. Storedahl & Sons, Inc. v. Cowlitz County, 125 Wn. App. 1, 6, 103 P.3d 802 (2004).

Here, the administrative action at issue is the Hearing Examiner's ruling that the City's land use code did not authorize the Examiner to resolve an appeal from EPIC's LUPA petition challenging SDCI's decisions. This ruling by the Hearing Examiner was a land use decision as defined by LUPA.[8] RCW 36.70C.020(2).

Under LUPA, we may grant relief from a land use decision if the petitioner establishes that "[t]he land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise." RCW 36.70C.130(1)(b). Accordingly, in reviewing the Examiner's ruling, we give deference to the Examiner's construction of the City's land use code. Cingular Wireless, LLC v. Thurston County, 131 Wn. App. 756, 768, 129 P.3d 300 (2006).

A hearing examiner "has only the authority granted it by statute or ordinance." HJS Dev., Inc. v. Pierce County ex rel. Dep't of Planning & Land Servs., 148 Wn.2d 451, 471, 61 P.3d 1141 (2003) (citing Lejeune v. Clallam County, 64 Wn. App. 257, 270, 823 P.2d 1144 (1992)). As pertinent here, the Hearing Examiner's authority to resolve an administrative appeal of the

---

[8] The Hearing Examiner's ruling regarding the Examiner's administrative appeal authority under the land use code was a distinct land use decision under LUPA with a limitation period separate and apart from the LUPA limitation period applicable to the SDCI decisions challenged by EPIC. Because EPIC filed its LUPA petition challenging the Hearing Examiner's ruling within 21 days of the Hearing Examiner's final determination (the Examiner's denial of EPIC's motion to reconsider the Examiner's ruling), the timeliness of EPIC's LUPA petition challenging the Examiner's ruling is not here at issue.

challenged SDCI decisions is established by ordinance codified at chapter 23.76 of the Seattle Municipal Code—referred to herein as the City's land use code.

"Interpretation of local ordinances is governed by the same rules of construction as state statutes." HJS Dev., 148 Wn.2d at 471 (citing World Wide Video, Inc. v. City of Tukwila, 117 Wn.2d 382, 392, 816 P.2d 18 (1991)).

"'[A] court must not add words where the legislature has chosen not to include them. A court also must construe statutes such that all of the language is given effect, and no portion [is] rendered meaningless or superfluous.'" In re Reinterment of Remains of Faenov, 194 Wn. App. 42, 48, 376 P.3d 447 (second alteration in original) (internal quotation marks omitted) (quoting Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003)), review denied, 186 Wn.2d 1015 (2016). Significantly,

> [a] general statutory provision must yield to a more specific statutory provision. Waste Mgmt. of Seattle[, Inc., v. Utils. & Transp. Comm'n], 123 Wn.2d [621,] 629-30 [, 869 P.2d 1034 (1994)]; see also Kustura v. Dep't of Labor & Indus., 169 Wn.2d 81, 91, 233 P.3d 853 (2010) (general statutory provisions inapplicable in light of statutory provision that "specifically addresse[d] and definitively establish[ed]" the question before the court).

Ass'n of Wash. Spirits & Wine Distribs. v. Liquor Control Bd., 182 Wn.2d 342, 356, 340 P.3d 849 (2015).

In this matter, the Hearing Examiner first determined that former SMC 23.76.006.C (2016)[9] set forth the *exclusive* list of Type II decisions subject to

---

[9] Former SMC 23.76.006.C, enacted on December 21, 2016, City of Seattle Ordinance No. 125233, was the land use code provision in effect at the time that SDCI and the Hearing Examiner made their respective decisions. As will be discussed below, the City Council amended former SMC 23.76.006.C in June 2017, six months after the Hearing Examiner issued the ruling here at issue.

administrative appeal to the Examiner.[10]   This determination relied upon a construction of SMC 23.76.004, .006.C, and .022(A).  Each of these provisions is set forth below.

SMC 23.76.004 reads, in pertinent part:

A.  Land use decisions are classified into five categories. Procedures for the five different categories are distinguished according to who makes the decision, the type and amount of public notice required, and whether appeal opportunities are provided.  Land use decisions are *generally categorized* by type in Table A for 23.76.004.
B.  Type I and II decisions are made by the Director and are consolidated in Master Use Permits. Type I decisions are decisions made by the Director that are not appealable to the Hearing Examiner. Type II decisions are discretionary decisions made by the Director that are subject to an administrative open record appeal hearing to the Hearing Examiner.

(Emphasis added.)  Significantly, SMC 23.76.004 provides that "Sections 23.76.006 and 23.76.036[11] establish the types of land use decisions in each category."[12]  SMC 23.76.004, Table A n.1.

Former SMC 23.76.006.C sets forth a list of Type II land use decisions, totaling 14 distinct land use decisions.  Notably, the challenged SDCI decisions are not listed among the Type II land use decisions set forth in former SMC 23.76.006.C.

---

[10] The City's land use code categorizes land use decisions made by the City—including land use decisions by SDCI—into one of five types of decisions.  SMC 23.76.004.A.  A subset of SDCI's land use decisions are categorized as Type II decisions.  SMC 23.76.004.B, 006.A.  The parties do not dispute that the challenged SDCI decisions constituted Type II decisions.

[11] SMC 23.76.036 regards Type IV and Type V land use decisions made by the City Council, which are not at issue on appeal.

[12] SMC 23.76.004 also sets forth a table listing land use decisions by type and states that the table "is intended to provide *only a general description* of land use decision types."  SMC 23.76.004, Table A n.1 (emphasis added).

SMC 23.76.022(A) regards administrative appeals of Type II land use decisions to the Hearing Examiner. It reads, "All Type II decisions listed in subsection 23.76.006.C are subject to an administrative open record appeal." SMC 23.76.022(A).

Upon review of the foregoing land use code provisions, the Examiner determined that,

> [w]hen SMC 23.76.004, SMC 23.76.006, and SMC 23.76.022 [are] read together and harmonized, their plain meaning is apparent. SMC 23.76.004 is intended to provide a general summary of the land use decision framework, much of which is taken up again in SMC 23.76.006 in greater detail. SMC 23.76.004.B makes the general statement that Type I decisions are made by the [SDCI] Director and may not be appealed to the Examiner, whereas Type II decisions are discretionary decisions made by the Director and are subject to an appeal to the Examiner. Read in isolation, this section appears to state that all Type II decisions may be appealed to the Examiner. If that were true, the Director's decision to modify development standards for the subject project could be appealed to the Hearing Examiner because, as a Type II decision identified as such in SMC 23.51A.004, it would fit within the list of Type II decisions in Table A for 23.76.004. But Footnote I to Table A confirms that it is SMC 23.76.006, not SMC 23.76.004, that "establish[es] the types of land use decisions in each category." And SMC 23.76.006 controls not just which decisions are Type II, but of those, which may be administratively appealed. This construction is reinforced by SMC 23.76.022, which is the source of the Examiner's jurisdiction over appeals of Type II decisions and confirms that "[a]ll Type II decisions *listed in subsection 23.76.006.C*" may be appealed to the Hearing Examiner.

Accordingly, the Examiner determined that former SMC 23.76.006.C set forth the exclusive list of Type II decisions subject to administrative appeal to the Examiner.

This determination was sensible. As well-reasoned by the Examiner, a combined reading of the three land use code provisions, by their plain terms,

indicates that the City intended that SMC 23.76.006.C set forth the exclusive list of Type II decisions subject to administrative appeal to the Examiner.

The Hearing Examiner next determined that former SMC 23.76.006.C did not list among the Type II decisions set forth therein a decision by SDCI to either modify or waive building-width and setback development standards for a youth services center or impose SEPA conditions on the Project.

The parties do not dispute that former SMC 23.76.006.C did not set forth either of these SDCI decisions. Indeed, neither such decision was listed in former SMC 23.76.006.C. Thus, the Examiner's determination was proper.

In light of the two foregoing determinations, the Examiner ultimately determined that

> [u]nder the Land Use Code, neither [SDCI's] decision to modify or waive development standards for the Family and Justice Center Project under SMC 23.51A.004.C, nor [SDCI's] imposition of SEPA conditions on the Project under Chapter 25.05 SMC, is a Type II decision that may be appealed to the Hearing Examiner.

Accordingly, the Hearing Examiner ruled that the City's land use code did not authorize the Examiner to resolve an administrative appeal from the challenged SDCI decisions.

The Hearing Examiner's ruling was sound. The Examiner's ruling logically followed from the Examiner's prior determinations and, given the Examiner's expertise with the City's land use code, the Examiner's ruling is entitled to our deference. RCW 36.70C.130(1)(b). There was no error.[13]

---

[13] EPIC nevertheless contends that the City's land use code granted the Hearing Examiner the authority to resolve its administrative appeal from the challenged SDCI decisions. This is so, EPIC asserts, because when SMC 23.51A.004B.6, SMC 23.76.004, and SMC

2

EPIC next contends that the superior court erred by determining that EPIC's LUPA petition challenging SDCI's decisions was untimely because the superior court incorrectly identified the decisions by SDCI as the final land use decisions issued on behalf of the City regarding the challenged SDCI decisions. This is so, EPIC avers, because the Hearing Examiner's ruling explicitly set forth that "the decision of the Hearing Examiner in this case is the final decision for the City of Seattle."

EPIC is incorrect. The briefing and argument before the Hearing Examiner regarded the Examiner's authority under the City's land use code to resolve an administrative appeal from the challenged SDCI decisions. The Hearing Examiner's analysis and ultimate ruling reflect that the Examiner issued a determination regarding the Examiner's authority to resolve such an appeal. Indeed, when the Hearing Examiner ruled that the Examiner's decision "in this case is the final decision for the City of Seattle," the Examiner was plainly

---

23.76.028 are construed together, these provisions establish that *all* Type II decisions are subject to an administrative appeal to the Examiner.

We disagree. As a preliminary matter, EPIC's argument improperly reads out of the City's land use code the three provisions that directly relate to Type II decisions and administrative appeal thereof—former SMC 23.76.006, SMC 23.76.004 Table A n.1, and SMC 23.76.022. We do not favor an interpretation that renders these provisions "'meaningless or superfluous.'" In re Reinterment of Remains of Faenov, 194 Wn. App. at 48 (internal quotation marks omitted) (quoting Rest. Dev., Inc., 150 Wn.2d at 682). Indeed, if the City intended to make *all* Type II decisions appealable, there would be no justification for setting forth the list of Type II decisions codified at SMC 23.76.006 nor would it be necessary for two additional land use code provisions to cross-reference SMC 23.76.006 as setting forth such a list.

Furthermore, because SMC 23.76.004 indicates that it is intended to provide only a "general description of land use decision types," see Table A n.1, and SMC 23.76.022.A specifically identifies that former SMC 23.76.006 is the provision that sets forth the list of appealable Type II decisions, SMC 23.76.022.A, the more specific land use code provision, must control over the more general land use code provisions relied upon by EPIC. Ass'n of Wash. Spirits & Wine Distribs., 182 Wn.2d at 356. Thus, EPIC's proposed construction is unavailing.

referencing the ruling that the Examiner was asked to make upon the dismissal motion of King County and Balfour Beatty. Accordingly, the Examiner's ruling was a final determination as to the Examiner's authority to resolve an administrative appeal from the challenged SDCI decisions.

It must be emphasized that the Hearing Examiner's ruling was a land use decision wholly distinct from the final land use decisions issued by SDCI in this matter. Indeed, as analyzed, SDCI was the local jurisdictional body with highest authority to render a land use decision regarding the challenged SDCI decisions.

Thus, the Examiner's ruling was not a final determination as to the propriety of the challenged SDCI decisions but, rather, was a final determination as to the Examiner's authority to resolve EPIC's administrative appeal to the Examiner. Accordingly, the superior court did not err by concluding that the Hearing Examiner's ruling was not the final determination regarding the challenged SDCI decisions. There was no error.[14]

3

EPIC next contends that the superior court erred by ruling that EPIC's LUPA petition challenging SDCI's decisions was untimely because a retroactive ordinance enacted by the City Council three weeks prior to the superior court's ruling granted the Hearing Examiner the authority under the land use code to resolve an administrative appeal from the challenged SDCI decisions. Because the Hearing Examiner was retroactively granted this authority, EPIC avers,

---

[14] Given our disposition of the superior court's dismissal of EPIC's LUPA petition challenging SDCI's decisions, infra, we do not address the contention that EPIC lacked standing under LUPA to bring its petition challenging SDCI's decisions.

EPIC's LUPA petition challenging SDCI's decisions was timely filed, notwithstanding that SDCI had months earlier approved King County's request for a MUP under the then-existing administrative appeal procedures. EPIC is mistaken.

"Legislation cannot be applied retroactively where doing so would affect vested rights." Kitsap All. of Prop. Owners v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 160 Wn. App. 250, 261, 255 P.3d 696 (2011) (citing Lummi Indian Nation v. State, 170 Wn.2d 247, 261, 241 P.3d 1220 (2010); Hale v. Wellpinit Sch. Dist. No. 49, 165 Wn.2d 494, 507, 198 P.3d 1021 (2009); Wash. State Farm Bureau Fed'n v. Gregoire, 162 Wn.2d 284, 304-05, 174 P.3d 1142 (2007)).

Municipalities, within the parameters of the vested rights doctrine set forth in our statutory and decisional authority, "are free to develop vesting schemes best suited to the needs of a particular locality." Erickson & Assocs., Inc. v. McLerran, 123 Wn.2d 864, 873, 872 P.2d 1090 (1994).

The City of Seattle's vesting scheme applicable to Master Use Permits reads, in pertinent part, "[A]pplications for Master Use Permit components other than subdivisions and short subdivisions shall be considered vested under the Land Use Code and other land use control ordinances in effect on the date . . . [o]f the Director's decision, if the decision is not appealable to the Hearing Examiner." SMC 23.76.026.A (emphasis added).[15]

---

[15] See Erickson & Assocs., 123 Wn.2d at 875 ("The City's vesting ordinance strikes a proper balance between developers' rights and public interest." (analyzing SMC 23.76.026)).

Here, SDCI issued its decisions challenged by EPIC on December 22, 2016. As analyzed, these decisions were not appealable to the Hearing Examiner. Therefore, EPIC had 21 days from the issuance of the challenged SDCI decisions to submit a LUPA petition to the superior court. EPIC did not do so. Therefore, under SMC 23.76.026, King County possessed a vested interest in commencing the Justice Center Project in accordance with the regulations and ordinances in effect in January 2017.

Nevertheless, in June 2017, the City Council enacted an ordinance that amended former SMC 23.76.006.C to add to the exclusive list of Type II decisions a "Decision to waive or modify development standards relating to structure width or setbacks for a youth service center pursuant to subsection 23.51A.004.B.6."[16] The ordinance stated that it had retroactive effect, with an effective date of April 1, 2015.

But the City's June 2017 ordinance could not lawfully have retroactive effect as applied to the challenged SDCI decisions underlying King County's Master Use Permit in this matter. The City enacted the ordinance in question in June 2017, six months *after* King County's rights in its Master Use Permit had vested. Therefore, King County retained a right to proceed with the Justice Center Project with the municipal land use code provisions in effect as of January

---

[16] See City of Seattle Ordinance No. 125319 (enacted on June 1, 2017). Although the preamble to this ordinance set forth that it was an ordinance "amending Section 23.76.006 of the Seattle Municipal Code to clarify that a land use decision to waive or modify structure width or setbacks for a youth service center, *and integrated SEPA decisions*, are Type II decisions that may be appealed to the City Hearing Examiner," the June 2017 ordinance does not appear to amend former SMC 23.76.006.C to list a decision by SDCI to impose SEPA conditions on the Justice Center Project. See Ordinance No. 125319 (emphasis added).

2017, including those provisions that, as explained, did not authorize the Hearing Examiner to resolve an administrative appeal from the challenged SDCI decisions.

Accordingly, the superior court did not err by rejecting EPIC's argument.[17]

4

EPIC next contends that the superior court erred by ruling that EPIC's LUPA petition challenging SDCI's decisions was untimely because SDCI's issuance of an inaccurate notice of appeal warrants application of the equitable tolling doctrine in EPIC's favor.

Equitable tolling is a doctrine applicable to conduct by parties to a dispute. See, e.g., Graham Neigh. Ass'n v. F.G. Assocs., 162 Wn. App. 98, 119, 252 P.3d 898 (2011) ("'The predicates for equitable tolling are bad faith, deception, or false assurances by the *defendant* and the exercise of diligence by the *plaintiff*.'" (emphasis added) (internal quotation marks omitted) (quoting Nickum, 153 Wn. App. at 379)).

Because SDCI was not a party to the dispute at the time that it issued the notice of appeal, EPIC's argument fails. When SDCI issued the notice of appeal in question, the parties to the dispute were EPIC, King County, and Balfour

---

[17] EPIC contends that the City's June 2017 ordinance has retroactive effect because it was designated as a "curative ordinance." A curative ordinance "clarifies or technically corrects an ambiguous'" preexisting ordinance. See McGee Guest Home, Inc. v. Dep't of Soc. & Health Servs., 142 Wn.2d 316, 325, 12 P.3d 144 (2000) (quoting In re F.D. Processing, Inc., 119 Wn.2d 452, 460, 832 P.2d 1303 (1992)). However, the land use code provisions here at issue were not ambiguous. Rather, by their plain terms, the provisions did not authorize the Hearing Examiner to resolve an appeal from the challenged SDCI decisions. Moreover, even a curative ordinance could not divest King County of its vested rights.

Beatty. SDCI was not a party but, rather, was a decision-maker. No action by a party to the dispute was inequitable.

Thus, equitable tolling does not apply. There was no error.[18]

The superior court did not err by dismissing as untimely EPIC's LUPA petition challenging SDCI's decisions.[19]

III

EPIC next contends that the superior court erred by dismissing its mandamus actions against King County. We disagree.

As indicated, "LUPA does not apply to judicial review of . . . 'applications for a writ of mandamus or prohibition.'" Durland, 175 Wn. App. at 321 n.2 (quoting RCW 36.70C.030(1)). We engage in de novo review of a superior court

---

[18] EPIC's appellate briefing also argues that the doctrine of equitable estoppel should require that the City's inaccurate statement regarding a hearing examiner appeal should cause a tolling of LUPA's limitation period. EPIC presents no authority or analysis in support of this argument. We do not consider arguments unsupported by analysis or citation to authority. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Regardless, equitable estoppel, as with equitable tolling, is a doctrine applicable to parties to a dispute, rather than to decision-makers. See, e.g., Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc., 168 Wn. App. 56, 79, 277 P.3d 18 (2012) (describing elements of equitable estoppel with regard to actions by parties (quoting Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wn.2d 738, 743, 863 P.2d 535 (1993)). As explained, the City was a decision-maker, not a party to the dispute, when it issued the notice challenged by EPIC. Accordingly, EPIC's argument fails.

[19] EPIC also contends that the superior court erred by determining that EPIC's LUPA petition was untimely given that RCW 36.70B.130 granted it a statutory right to proper notice of the procedure for administrative appeal and the City's failure to give such notice must be deemed to toll LUPA's limitation period. We disagree. As analyzed, the City's land use code did not, in actuality, authorize an administrative appeal from the challenged SDCI decisions. EPIC thus had no right to notice pursuant to RCW 36.70B.130.

EPIC next relies on Barrie v. Kitsap County, 84 Wn.2d 579, 527 P.2d 1377 (1974), Prekeges v. King County, 98 Wn. App. 275, 990 P.2d 405 (1999), and Leson v. Dep't of Ecology, 59 Wn. App. 407, 799 P.2d 268 (1990), for the proposition that inaccurate notice of the possibility of an administrative appeal tolls the statutory limitation period applicable to the filing of a LUPA petition. Because none of these decisions, in actuality, set forth the proposition alleged by EPIC, EPIC's reliance upon them is unavailing.

decision on a petition for a writ of mandamus. Land Title of Walla Walla, Inc. v. Martin, 117 Wn. App. 286, 289, 70 P.3d 978 (2003).

A

EPIC contends that the superior court erred by dismissing its mandamus action against King County on the basis that EPIC had another plain, speedy, and adequate remedy in the ordinary course of law. EPIC is incorrect.

Mandamus is an extraordinary remedy. Burg v. City of Seattle, 32 Wn. App. 286, 289, 647 P.2d 517 (1982). "Mandamus is appropriate to compel a government official or entity 'to comply with law.'" Eugster v. City of Spokane, 118 Wn. App. 383, 404, 76 P.3d 741 (2003) (quoting In re Pers. Restraint of Dyer, 143 Wn.2d 384, 398, 20 P.3d 907 (2001)).

To be granted mandamus it must be established that "the applicant has no 'plain, speedy and adequate remedy in the ordinary course of law,' RCW 7.16.170." Eugster, 118 Wn. App. at 402. "'What constitutes a plain, speedy, and adequate remedy depends on the facts of the case.'" Dress v. Dep't of Corr., 168 Wn. App. 319, 337, 279 P.3d 875 (2012) (quoting City of Olympia v. Thurston County Bd. of Comm'rs, 131 Wn. App. 85, 96, 125 P.3d 997 (2005))

Here, King County, in its capacity as a property owner, began construction on the Justice Center Project pursuant to the MUP issued by SDCI. EPIC nevertheless filed a mandamus action against King County, in the County's capacity as a governmental entity, and sought to compel the County to comply with the environmental checklist and mitigation conditions set forth in its MDNS.

However, by engaging in construction on the Project, King County was not acting in its capacity as a governmental entity but, rather, the County was acting as a property owner. Operating in its property-owner capacity, King County was not subject to a writ of mandamus.[20]

Instead, the governmental entity responsible for King County's conduct was the City—the governmental entity that issued the MUP authorizing King County's construction on the Project. Therefore, if King County was not in compliance with the MUP issued by the City, EPIC should have sought relief from or against the City. Indeed, provisions set forth in the City's land use code might allow for such enforcement.[21]

Given that the City might be subject to a mandamus action for King County's alleged noncompliance with the MUP, EPIC does not establish that it has no "plain, speedy and adequate remedy in the ordinary course of law." RCW 7.16.170. Accordingly, the superior court did not err by dismissing EPIC's mandamus action against King County.[22]

---

[20] EPIC relies upon two unpublished appellate opinions in support of its claim that it may maintain a mandamus action against King County for alleged violations of MDNS conditions. Neither opinion is persuasive. Thus, EPIC's reliance is unavailing.

[21] SMC 23.90.002.B provides that it is a violation for any person to "use, construct, locate, demolish, or cause to be used, constructed, located, or demolished any structure . . . in any manner that is not permitted by the terms of any permit." Additionally, SMC 23.90.018.C provides that

> [c]ivil actions to enforce this Title 23 shall be brought exclusively in Seattle Municipal Court except for violations of permit terms related to Chapter 23.58C or as otherwise required by law or court rule. The Director shall request in writing that the City Attorney take enforcement action. The City Attorney shall, with the assistance of the Director, take appropriate action to enforce this Title 23.

[22] One of the bases on which the superior court dismissed EPIC's complaint was improper venue—that EPIC's mandamus action should have been filed in the Seattle Municipal Court, rather than in the King County Superior Court. The superior court erred by dismissing EPIC's claim on this basis.

B

EPIC next contends that the superior court erred by dismissing its mandamus action against King County on the basis that EPIC did not establish that it had standing under SEPA to bring its action.

In order for a writ of mandamus to issue, it must be established that the petitioner is a "party beneficially interested." RCW 7.16.170. To demonstrate standing under SEPA, a party must "show that the interest sought to be protected is 'arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" Magnolia Neigh. Planning Council v. City of Seattle, 155 Wn. App. 305, 312, 230 P.3d 190 (2010) (internal quotation marks omitted) (quoting Save a Valuable Env't (SAVE) v. City of Bothell, 89 Wn.2d 862, 866, 576 P.2d 401 (1978)).

EPIC's appellate briefing in support of its mandamus action does not detail the organizational interests that it claims place it within SEPA's zone of interest. Rather, the only portion of EPIC's appellate briefing in support of its argument is the conclusory statement that "EPIC is . . . 'aggrieved or adversely affected' as required by RCW 36.70C.060 and has suffered an injury in fact within SEPA's

---

RCW 7.16.160 sets forth the grounds for granting a writ of mandamus. The provision reads: "**Grounds for granting writ.** It may be issued by any court, *except a district or municipal court*, to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station." RCW 7.16.160 (emphasis added).

Thus, a writ of mandamus cannot be issued by a municipal court. This includes the Seattle Municipal Court. Accordingly, the superior court erred by dismissing EPIC's complaint on the basis of improper venue.

Our determination that the superior court erred by basing its dismissal order on improper venue does not affect our determination that the superior court properly dismissed EPIC's complaint for other reasons.

zone of interests." Such conclusory language is insufficient to establish standing. The superior court did not err by dismissing EPIC's mandamus action against King County on this basis.[23]

IV

Respondents King County and Balfour Beatty request an award of attorney fees and costs pursuant to RCW 4.84.370.

The predicate for an award of reasonable fees and costs incurred in appeal of decisions regarding development permits is established by statute. RCW 4.84.370 reads:

> (1) Notwithstanding any other provisions of this chapter, reasonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals or the supreme court of a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision. The court shall award and determine the amount of reasonable attorneys' fees and costs under this section if:

---

[23] EPIC contends that the superior court erred by denying its request to amend its complaint. We disagree. EPIC's request to amend its complaint constituted two sentences embedded in its response to King County's motion to dismiss. This did not comply with state and local rules governing motion practice. See CR 7(b)(1) and LCR 7(b)(5). Thus, the superior court did not err by denying EPIC's plainly nonconforming request to amend its complaint.

EPIC next contends that the superior court erred by denying its request for a writ of mandamus ordering SDCI to issue a proper notice of appeal. We disagree. "Mandamus is an appropriate means to compel a state official 'to comply with law when the claim is clear and there is a duty to act.'" Paxton v. City of Bellingham, 129 Wn. App. 439, 444, 119 P.3d 373 (2005) (quoting Dyer, 143 Wn.2d at 398). Again, RCW 36.70B.130 requires that a notice of decision provide "the procedures for administrative appeal, if any." As analyzed, the challenged SDCI decisions were Type II decisions not subject to administrative appeal. Because there were no procedures established by ordinance authorizing administrative appeal of the challenged SDCI decisions, RCW 36.70B.130 did not impose on SDCI a clear legal duty to issue any notice. Because SDCI had no clear legal duty to act, the superior court did not err by dismissing EPIC's mandamus claim against SDCI.

EPIC next contends that the superior court erred by not enforcing an alleged statutory duty of SDCI pursuant to the Declaratory Judgment Act. EPIC presents no decisional authority or analysis in support of this contention. Accordingly, we decline to consider it. Cowiche Canyon Conservancy, 118 Wn.2d at 809.

(a) The prevailing party on appeal was the prevailing or substantially prevailing party before the county, city, or town, or in a decision involving a substantial development permit under chapter 90.58 RCW, the prevailing party on appeal was the prevailing party or the substantially prevailing party before the shoreline[s] hearings board; and

(b) The prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings.

Here, King County, as the owner of the property in question, sought a permit from the City of Seattle. King County and Balfour Beatty are the prevailing parties on appeal. They prevailed at the superior court. They also prevailed before the SDCI decision-maker and the City's Hearing Examiner. Accordingly, King County and Balfour Beatty are entitled to an award of appellate court attorney fees and costs.[24] Upon a proper application, a commissioner of our court will enter an appropriate order.

Affirmed.

We concur:

---

[24] EPIC filed a motion to strike respondents' statement of additional authorities. Upon consideration, EPIC's motion to strike is denied.